# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAVE BLILER; CHELSEA BLILER; and PAIGE BLILER,<br><br>*Plaintiffs*,<br><br>v.<br><br>OLYPHANT BOROUGH, Pennsylvania; and WILLIAM SHIGO, in his official capacity as Zoning Officer for Olyphant Borough, Pennsylvania,<br><br>*Defendants*. | Case No. |

## VERIFIED COMPLAINT

Plaintiffs Dave Bliler, Chelsea Bliler, and Paige Bliler (the "Blilers"), through their undersigned counsel, bring this action against Olyphant Borough, Pennsylvania (the "Borough") and William Shigo, in his official capacity as the Borough's Zoning Officer (collectively "Defendants"). The Blilers allege the following:

## **INTRODUCTION**

1.      Peacefully expressing speech through signs on one's own property is a central liberty protected by the First Amendment. The right to display opinions on matters of public concern has long been vital to the concept of American identity and trumps all but the most important and narrowly tailored government interests. Attempts to regulate such speech carry a heavy presumption of invalidity.

2.      The Borough's sign ordinance (the "Ordinance") tramples this liberty. It limits most residential property owners to just one sign that is no larger than six square feet. Whether the sign is for ideological causes, political campaigns, or religious faith, almost all signs are subject to this restriction. And for the one sign that most residential property owners may have, it is subject to a permitting regime. The words on the sign must pass the Borough's content reviewers, applicants must pay a fee, and the Borough can take as much time as it likes in adjudicating permit decisions.

3.      Despite these restrictions on Borough residents, the Borough has completely exempted itself from the Ordinance. While Borough residents may erect

just one small sign on their property, the government may place as many signs—of whatever size and on whatever topics—as it likes on its property. In addition, the Ordinance grants favorable treatment to other types of signs based on their content.

4.      The Ordinance violates the United States Constitution, and the Blilers are the victims of the Borough's unlawful Ordinance. In October 2023, the Blilers placed a four-by-eight-foot thin plastic sign (the "Sign") on the front of their house in a residential Olyphant neighborhood. The Sign said, "FUCK THE GOVERNMENT."

5.      Shortly after the Blilers erected the Sign, the Borough sent them an enforcement letter, informing them that the Sign was in violation of the Ordinance's permit and size requirements. The letter threatened to haul the Blilers before a judge and impose a $500 fine per day if they were found to be in violation of the Ordinance. Though their neighborhood is littered with signs that appear to lack a permit, to the Blilers' knowledge, they are the only ones facing the Borough's enforcement action.

6.      Fearful of facing this significant fine, the Blilers have, for now, opted to take down the Sign rather than risk punishment. But their desire to continue expressing their message has not dissipated. To the contrary, their criticism of the government has intensified. And rightly so—the Ordinance is an impermissibly restrictive regulation of speech, and the Borough's attempts to silence the Blilers' speech constitute viewpoint discrimination.

7.     When citizens are prohibited from criticizing the government on their own property but the government can say whatever it wants, the First Amendment is offended. And the First Amendment prohibits the Ordinance's favoritism for other signs based on their content. The Court should enjoin Defendants from enforcing the Ordinance and award the Blilers the other relief requested herein.

## PARTIES

8.     Plaintiff Dave Bliler is a veteran of the United States Marine Corps. He co-owns a house located at 309 Mooney Street, Olyphant Borough, Pennsylvania, where he resides with Chelsea Bliler (his wife) and Paige Bliler (his adult daughter).

9.     Plaintiff Chelsea Bliler co-owns and resides in the house located at 309 Mooney Street, Olyphant Borough, Pennsylvania.

10.     Plaintiff Paige Bliler co-owns and resides in the house located at 309 Mooney Street, Olyphant Borough, Pennsylvania. Paige is Dave's biological daughter and Chelsea's stepdaughter. There are no other owners of or residents at the house located at 309 Mooney Street.

11.     Defendant Olyphant Borough, Pennsylvania is a borough municipality in Lackawanna County, Pennsylvania and is a political subdivision of the Commonwealth of Pennsylvania.

12.     William Shigo is the Zoning Officer for Olyphant Borough. At all relevant times, he has been and is responsible for enforcing the Borough's zoning

ordinances, including the sign ordinance. At all relevant times, Mr. Shigo was a state actor acting under color of state law.

## JURISDICTION

13.    This action arises under the First and Fourteenth Amendment to the United States Constitution, 42 U.S.C. § 1983, and 28 U.S.C. §§ 2201 and 2202.

14.    This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1343(3).

15.    Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the Blilers' claims occurred within this district.

## BACKGROUND

### The Ordinance

16.    The Borough regulates the use of private property through a zoning ordinance. The zoning ordinance contains a section that governs the use of signs. *See* Olyphant Borough Zoning Ordinance (the "Ordinance"), attached as Exhibit A.

17.    The Ordinance's stated purpose is to "balance the need to protect the public safety and welfare, the need for a well maintained and attractive community, and the need for adequate identification, communication and advertising." *Id.* § 901.

18.    The Ordinance applies to "all on-premise signs, sign structures, awnings, and other types of sign devices located within the Borough" visible from a

public roadway. *Id.* § 902.

19. The Ordinance includes a lengthy list of exemptions and exceptions, such as flags and certain name and address signs, handicapped parking signs, private drive signs, and all public signs. *Id.* §§ 908.E, 908.J, 908.L, 908.M, 908.N.

20. "Public Signs" are defined as "[s]igns erected by government agencies or utilities, including traffic, utility, safety, railroad crossing and identification signs for public facilities and any signs erected by the Borough. *Id.* § 908.N. Thus, the Borough has exempted itself from the Ordinance, including for signs that contain the Borough's political speech. *Id.*

### Numerical and Size Limitations

21. The Ordinance limits the number of signs a property owner can display. *Id.* § 916.A.1. In general, property owners are limited to "one sign per premises or property." *Id.* For property fronting more than one street, the Ordinance allows for one sign on each street front. *Id.* But residents may have more than one sign depending on the content of the additional sign(s), including (1) signs that list the name and address of the occupants (two additional signs), (2) handicapped parking signs (no numerical limitation), (3) private drive signs (one additional sign per driveway), (4) security and warning signs (one additional sign), and (5) real estate signs (one additional sign). *Id.* §§ 908.J, 908.L., 908.M., 908.O, 916.A.2.

22. The Ordinance contains different size limitations depending on the

content of the sign. In residential areas, signs generally may not be larger than six square feet. *Id.* § 916.A.1. But "contractors and artisans" may display signs up to twelve square feet promoting their businesses while they are working on the property. *Id.* § 916.B.1. And "[s]igns for permitted non-residential or permitted institutional uses" may be thirty-two square feet. *Id.* § 916.B.4. These latter types of signs may also be erected on each frontage and each "entrance [] or exit" to the property. *Id.*

## **The Permitting Requirement**

23.    Unless exempted, all "temporary signs" in the Borough require a permit. *Id.* § 910. The Ordinance defines a "temporary sign" as a "sign intended to display either commercial or noncommercial messages of a transitory or temporary nature. Portable signs or any sign not permanently embedded in the ground or not permanently affixed to a building or sign structure that is permanently embedded in the ground, are considered temporary signs." *Id.* § 904.

24.    To obtain a permit, the property owner must apply to the Zoning Officer and pay a fee. *Id.* § 910. The permit application fee is set forth in a fee schedule set and maintained by the Borough. *Id.* §§ 910.F, 1213.E. The Borough has informed the Blilers the fee currently starts at $40.00, and increases depending on the size of the sign.

25.    To apply for a permit, the property owner must submit "plans and

specifications" to the Zoning Officer "showing the dimensions, materials, and required details of construction including loads, stresses, anchorage, and any other pertinent data." *Id.* § 910.C.

26.    The Zoning Officer will only issue a permit if the proposed sign complies with the Ordinance. On information and belief, the Zoning Officer also reviews temporary signs for content. This allegation is being made on information and belief because, although the Ordinance does not itself contain a content review provision, the Blilers have been informed by Borough officials that the Borough's consistent practice for processing permit applications is that the Zoning Officer must approve the content of the sign before a permit will issue.

27.    Upon receipt of the application, the Zoning Officer has thirty days to determine whether to issue a permit. *Id.* § 1213.B.5. If the Zoning Officer denies the application, the property owner may appeal to the Zoning Hearing Board (the "Board"), which will conduct hearings on the appeal. *Id.* §§ 1205, 1209. The fee for such an appeal is currently $500.

28.    The first hearing before the Board must occur within sixty days from the time the appeal is filed. *Id.* § 1209.B. The applicant must complete the presentation of his case-in-chief within 100 days of the first hearing. *Id.* § 1209.C. Persons opposed to the application may also be heard. *Id.* They shall complete their presentation within 100 days of the first hearing held after the completion of the

applicant's case-in-chief. *Id.* The Ordinance does not set forth a deadline for the Board to hold the first hearing held after the completion of the applicant's case-in-chief. *Id.* The Board shall render a decision within forty-five days after the last hearing. *Id.* § 1209.K.

## Enforcement

29.    If the Zoning Officer determines any sign to be in violation of the Ordinance, he or she shall provide written notice to the property owner. *Id.* §§ 909.H, 1213.B.1. Upon notice, the property owner has ten days to bring the sign into compliance with the Ordinance or remove it. *Id.* § 908.H. If the property owner fails to comply, the Zoning Officer may remove the sign at the owner's expense. *Id.* In addition, the Borough may file a civil enforcement action with a magisterial district judge seeking imposition of a $500 fine per day plus the Borough's attorney's fees and costs. *Id.* § 1213.C.2.

30.    If a property owner disputes the Zoning Officer's determination, he or she may appeal to the Board. The fee for such an appeal is currently $500. If the property owner appeals, the Board will follow the same procedures as set forth in Paragraph 28 above. *Id.* § 1205.A.

## The Billers and The Sign

31.    The Blilers moved to the Borough in February 2023 from the neighboring town of Jessup after becoming proud new homeowners—something

they had been looking forward to for years. As residents of the Borough, they are subject to the Ordinance. 309 Mooney Street is located in Area R-2 (Medium Density Residential) on the Borough's Zoning Map. *See* Zoning Map – Borough of Olyphant – Lackawanna County, Pennsylvania, attached as Exhibit B.

32.    Like most residential properties in the Borough, the Blilers' house fronts only one street.

33.    Dave is a veteran of the United States Marine Corps and a proud and patriotic American. His experiences during and after his time in the military have molded his worldview. It is because of these experiences that Dave believes it important to express criticism of the government when criticism is warranted.

34.    Chelsea and Paige share this belief.

35.    The family recently experienced failures by the government that were no fault of their own yet had terrible consequences and changed their lives for the worse. It is because of these experiences that the Blilers feel compelled to speak out through signs on their property.

36.    On or about October 13, 2023—with the hope of peacefully expressing their frustration and passion to the government, neighbors and passers-by—the Blilers placed the Sign on the front of their house. The Sign is an approximately four-by-eight-foot piece of thin, lightweight plastic with red painted block lettering that reads "FUCK THE GOVERNMENT." The photograph below is an accurate

depiction of the Sign as photographed from the Blilers' front yard:



37.    The Sign is a "temporary sign" under the Ordinance.

38.    Shortly after the Blilers erected the Sign, they began to receive complaints from neighbors and other Borough residents about the message on the Sign. Borough residents made similar complaints to the Borough.

39.    On or about October 16, 2023, Olyphant Chief of Police James DeVoe visited the Blilers' residence to discuss the complaints. After a brief, cordial conversation, Chief DeVoe told Dave that he did not believe the Sign violated any law and that it was simply "free speech." Chief DeVoe left the Blilers' residence without issuing any citation.

40.     The Blilers hoped this visit from Chief DeVoe would end of the matter. After all, residents regularly place signs, some of which are much larger than six square feet, on their property throughout the Borough, including in the Blilers' neighborhood. Some examples of signs located near the Blilers' residence are set forth below:



On information and belief, most, if not all, of the owners of these other signs were not required to obtain permits for them. The Blilers are making this allegation on information and belief based on the large number of such signs in the Borough, the fact that some of these signs are larger than six square feet, and the fact the Borough has only one Zoning Officer who would likely not have the time to process

applications for all such signs. In addition, the Borough places signs on its property in residential areas that are much larger than six square feet containing political speech, including signs that bear the Borough's crest and motto (*Animo et Fide* (Courage and Faith)) and a representation of the American flag. Below are photographs (night and day) of a sign erected by the Borough at Condella Park:

 

41.    On or about November 2, 2023, the Blilers received a letter from Zoning Officer Shigo on Borough letterhead. *See* Letter from William Shigo (the "Enforcement Letter"), attached as Exhibit C. The Enforcement Letter informed the Blilers that the Sign was in violation of the Ordinance because (1) they had not obtained a permit and (2) the Sign was too big. *Id.* The Enforcement Letter ordered the Blilers to "apply for and obtain a permit and comply with all [sign] regulations . . . within ten (10) days." *Id.* The Enforcement Letter stated that if the Blilers failed to comply, the Borough would bring an enforcement action before a judge seeking a fine of up to $500 per day plus attorney's fees and costs. *Id.* The Enforcement Letter

also advised the Blilers that they had the right to appeal to the Board and that the appeal would cost $500. *Id.*

42.     Applying for a permit for the Sign would be futile because the Sign is larger (thirty-two square feet) than the six-square-foot limit on signs under the Ordinance.

43.     Rather than pay the fee to appeal or face an enforcement action and the possibility of a significant fine, each of which would present a significant hardship to the Blilers, the Blilers removed the Sign on November 12, 2023, within the required ten-day period after receiving the Enforcement Letter.

44.     Despite removing the Sign, the Blilers continue to want to display it. However, they are fearful that doing so could expose them to liability under the Ordinance. They will not display the Sign due to this fear.

45.     The Blilers also wish to erect additional signs on their property that are similar in composition, size, and message to the Sign. One of these other signs would say "GOVERNMENT CORRUPTION." The Blilers do not, however, want their property to be cluttered with signs and therefore do not seek to erect more than a few signs. The Blilers are fearful that erecting these additional signs could also expose them to liability under the Ordinance. They will not display these additional signs due to this fear.

## CLAIMS FOR RELIEF
### COUNT ONE
### 42 U.S.C. § 1983
### (Freedom of Speech - First Amendment)

46.     The Blilers hereby incorporate by reference all allegations of this Complaint as if alleged verbatim herein.

47.     The Blilers' speech and expressive activities as alleged herein are protected by the Free Speech Clause of the First Amendment to the United States Constitution.

48.     The Ordinance and its enforcement against the Blilers as set forth in this Complaint violated the Blilers' right to freedom of speech protected by the First Amendment both facially and as applied.

49.     The Ordinance is facially unconstitutional in at least the following ways:

   a.   The Ordinance's numerical and size limitations facially discriminate against speech based on its content. The Ordinance exempts the Borough's own speech while regulating private signs on private property. The Ordinance exempts certain signs from the permitting requirement based on their content. And the Ordinance allows signs containing certain commercial speech to be larger and more numerous than other signs based on their content. This content

discrimination is not narrowly tailored to further a compelling state interest.

b. The Ordinance's numerical and size restrictions are not narrowly tailored to further a substantial governmental interest and do not leave open adequate alternative channels for communication.

c. The Ordinance's permitting regime is defective because it confers unbridled discretion in the Borough.

d. The Ordinance's permitting regime is defective because requiring a permit and fee for all temporary signs is not narrowly tailored to further a compelling state interest.

e. The Ordinance's permitting regime is defective because requiring a permit and fee for all temporary signs is not narrowly tailored to further a substantial governmental interest and does not leave open adequate alternative channels for communication.

f. The Ordinance's permitting regime is defective because it does not impose its restraint only for a specified brief period of time.

50.   For the same reasons, the Ordinance may not be applied against the Sign in a manner that is consistent with the First Amendment.

51.   In addition, on information and belief, Defendants have unlawfully discriminated against the Blilers based on viewpoint and content by applying the

Ordinance against them based on resident complaints regarding the message on the Sign while failing to apply the Ordinance against others similarly situated in the Borough. The Blilers are making this allegation on information and belief because the Enforcement Letter came on the heels of the Blilers' interaction with Chief DeVoe, wherein he revealed that the Borough had received complaints about the sign, and because it does not appear that the Borough generally requires residents to obtain a permit for temporary signs, despite the Ordinance's requirement that they do so.

52.   The Blilers were engaged in constitutionally protected speech, Defendants' actions were motivated or substantially caused by the Blilers' exercise of their constitutional rights, Defendants acted with a viewpoint and content discriminatory intent or motive, and Defendants' actions chilled the Blilers' expression and would have been likely to chill a person of ordinary firmness from further speech.

53.   By enforcing the Ordinance against the Blilers while failing to enforce it against others, Defendants' actions were viewpoint- and content- discriminatory in violation of the First Amendment. Defendants have no compelling or legitimate reason that can justify their censorship of the Blilers' speech, and Defendants' actions were not narrowly tailored in furtherance of any such reason.

54.   By reason of the aforementioned acts, policies, practices, procedures,

and/or customs created, adopted, and enforced under color of state law, Defendants have deprived the Blilers of their right to freedom of speech in violation of the First Amendment as applied to the States and their political subdivisions under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

55.     As a direct and proximate result of Defendants' violation of the Free Speech Clause of the First Amendment, the Blilers have suffered irreparable harm, including the loss of their fundamental constitutional rights, entitling them to injunctive and declaratory relief, nominal and compensatory damages, and attorney's fees and costs.

**COUNT TWO**
**42 U.S.C. § 1983**
**(Equal Protection)**

56.     The Blilers hereby incorporate by reference all allegations of this Complaint as if alleged verbatim herein.

57.     The Equal Protection Clause of the Fourteenth Amendment requires Defendants to treat similarly situated persons alike.

58.     Defendants' enforcement against the Blilers as set forth in this Complaint violated the Blilers' right to equal protection of the laws protected by the Equal Protection Clause of the Fourteenth Amendment.

59.     On information and belief, Defendants have unlawfully discriminated against the Blilers based on viewpoint and content by applying the Ordinance against

them based on resident complaints regarding the message on the Sign while failing to apply the Ordinance against others similarly situated in the Borough. The Blilers are making this allegation on information and belief because the Enforcement Letter came on the heels of the Blilers' interaction with Chief DeVoe, wherein he revealed that the Borough had received complaints about the sign, and because it does not appear that the Borough generally requires residents to obtain a permit for temporary signs, despite the Ordinance's requirement that they do so.

60.    The Blilers were engaged in constitutionally protected speech, Defendants' actions were motivated or substantially caused by the Blilers' exercise of their constitutional rights, Defendants acted with a viewpoint and content discriminatory intent or motive, and Defendants' actions chilled the Blilers' expression and would have been likely to chill a person of ordinary firmness from further speech.

61.    By enforcing the Ordinance against the Blilers while failing to enforce it against others, Defendants' actions were viewpoint- and content- discriminatory in violation of the Equal Protection Clause. Defendants have no compelling or legitimate reason that can justify their censorship of the Blilers' speech, and Defendants' actions were not narrowly tailored in furtherance of any such reason.

62.    Defendants chose to selectively enforce the criminal laws as set forth herein out of an arbitrary desire to discriminate against the Blilers based on their

speech in violation of the Equal Protection Clause of the Fourteenth Amendment.

63.    By reason of the aforementioned acts, policies, practices, procedures, and/or customs created, adopted, and enforced under color of state law, Defendants have deprived the Blilers of their right to equal protection of the laws in violation of the Equal Protection Clause of the Fourteenth Amendment under 42 U.S.C. § 1983.

64.    As a direct and proximate result of Defendants' violation of the Equal Protection Clause of the Fourteenth Amendment, the Blilers have suffered irreparable harm, including the loss of their fundamental constitutional rights, entitling them to injunctive and declaratory relief, nominal and compensatory damages, and attorney's fees and costs.

## COUNT THREE
## 42 U.S.C. § 1983
### (Due Process)

65.    The Blilers hereby incorporate by reference all allegations of this Complaint as if alleged verbatim herein.

66.    The Due Process Clause of the Fourteenth Amendment to the United States Constitution prohibits Defendants from enforcing prior restraints on speech in their unfettered discretion without any clear or precise standards subject to objective measurement or application and without adequate procedural safeguards.

67.    The Ordinance and its enforcement against the Blilers as set forth in this Complaint violated the Blilers' right to due process of law protected by the Due

Process Clause of the Fourteenth Amendment both facially and as applied.

68.    The Ordinance is facially unconstitutional in at least the following ways:

      a.   The Ordinance's permitting regime is defective because it confers unbridled discretion in the Borough.

      b.   The Ordinance's permitting regime is defective because it does not impose its restraint only for a specified brief period of time.

69.    For the same reasons, the Ordinance may not be applied against the Sign in a manner that is consistent with the First Amendment.

70.    By reason of the aforementioned acts, policies, practices, procedures, and/or customs created, adopted, and enforced under color of state law, Defendants have deprived the Blilers of their right to due process of law in violation of the Due Process Clause of the Fourteenth Amendment under 42 U.S.C. § 1983.

71.    As a direct and proximate result of Defendants' violation of the Due Process Clause of the Fourteenth Amendment, the Blilers have suffered irreparable harm, including the loss of their fundamental constitutional rights, entitling them to injunctive and declaratory relief, nominal and compensatory damages, and attorney's fees and costs.

## PRAYER FOR RELIEF

**WHEREFORE**, the Blilers respectfully ask this Court:

A) to preliminarily and permanently enjoin Defendants from enforcing the Ordinance;

B) to preliminarily and permanently enjoin Defendants from enforcing the Ordinance against the Sign;

C) to declare the Ordinance unconstitutional on its face;

D) to declare the Ordinance unconstitutional as applied to the Sign.

E) to award the Blilers nominal and compensatory damages;

F) to award the Blilers reasonable attorney fees, costs, and expenses pursuant to 42 U.S.C. § 1988;

G) to grant such other and further relief as this Court should find just and proper.

[SIGNATURE BLOCKS ON FOLLOWING PAGE]

21

Dated: December 12, 2023                    Respectfully submitted,

                                            */s/ Karin Sweigart*
                                            Karin Sweigart
                                            (PA Bar ID: 317970)
                                            DHILLON LAW GROUP INC
                                            177 Post Street, Suite 700
                                            San Francisco, California 94108
                                            415 433-1700
                                            KSweigart@Dhillonlaw.com

                                            Josh Dixon*
                                            Eric A. Sell*
                                            CENTER FOR AMERICAN LIBERTY
                                            1311 Main Street, Suite 207
                                            Mount Airy, MD 21770

                                            *Counsel for Plaintiffs*
                                            * *Pro Hac Vice* application forthcoming

## VERIFICATION

I, Dave Bliler, declare as follows:

1.    I am over the age of eighteen years old, I am competent to make this verification, and have personal knowledge of the matters set forth herein.

2.    I have reviewed the Verified Complaint to be filed on my behalf in this matter.

3.    The allegations in paragraphs 1–10, 24, 26, 31–45, 51, and 59 of the Verified Complaint are within my personal knowledge and are true and correct to the best of my knowledge.

4.    All exhibits attached in support of this Verified Complaint are true and correct copies of the original documents.

5.    I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct to the best of my knowledge.

Executed on December 12, 2023
Olyphant, Pennsylvania

DAVE BLILER

I, Chelsea Bliler, declare as follows:

    1.     I am over the age of eighteen years old, I am competent to make this verification, and have personal knowledge of the matters set forth herein.

    2.     I have reviewed the Verified Complaint to be filed on my behalf in this matter.

    3.     The allegations in paragraphs 1–10, 31–45, 51, and 59 of the Verified Complaint are within my personal knowledge and are true and correct to the best of my knowledge.

    4.     All exhibits attached in support of this Verified Complaint are true and correct copies of the original documents.

    5.     I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct to the best of my knowledge.


Executed on December 12, 2023
Olyphant, Pennsylvania

CHELSEA BLILER

I, Paige Bliler, declare as follows:

1.      I am over the age of eighteen years old, I am competent to make this verification, and have personal knowledge of the matters set forth herein.

2.      I have reviewed the Verified Complaint to be filed on my behalf in this matter.

3.      The allegations in paragraphs 1–10, 31–45, 51, and 59 of the Verified Complaint are within my personal knowledge and are true and correct to the best of my knowledge.

4.      All exhibits attached in support of this Verified Complaint are true and correct copies of the original documents.

5.      I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct to the best of my knowledge.

Executed on December 12, 2023
Olyphant, Pennsylvania

PAIGE BLILER