## ARTICLE IX-C

### AIRPORT DISTRICT OVERLAY

#### 901-C  PURPOSE

The purpose of this article is to create an airport district overlay that considers safety issues around the **Wilkes-Barre/Scranton International Airport**, regulates and restricts the heights of constructed structures and objects of natural growth, creates appropriate zones, establishing the boundaries thereof and providing for changes in the restrictions and boundaries of such zones, creates the permitting process for use within said zones and provides for enforcement, assessment of violation penalties, an appeals process, and judicial review.

#### 902-C  RELATION TO OTHER ZONING DISTRICTS

The Airport District Overlay shall not modify the boundaries of any underlying zoning district. Where identified, the Airport District Overlay shall impose certain requirements on land use and construction in addition to those contained in the underlying zoning district.

#### 903-C  DEFINITIONS

The following words and phrases when used in this Article IX-B shall have the meaning given to them in this article unless the context clearly indicates otherwise.

**Airport Elevation -** The highest point of an airport's useable landing area measured in feet above sea level. The airport elevation of the **Wilkes-Barre/Scranton International Airport** is 962' above sea level. *(Runway elevation)*

**Airport Hazard -** Any structure or object, natural or manmade, or use of land which obstructs the airspace required for flight or aircraft in landing or taking off at an airport or is otherwise hazardous as defined in 14 CFR Part 77 and 74 Pa. Cons. Stat. §5102.

**Airport Hazard Area -** Any area of land or water upon which an airport hazard might be established if not prevented as provided for in this Ordinance and the Act 164 of 1984 (Pennsylvania Laws Relating to Aviation).

**Approach Surface (Zone) -** An imaginary surface longitudinally centered on the extended runway centerline and extending outward and upward from each end of the primary surface. An approach surface is applied to each end of the runway based on the planned approach. The inner edge of the approach surface is the same width as the primary surface and expands uniformly depending on the planned approach. The approach surface zone, as shown on Figure B, is derived from the approach surface.

**Conical Surface (Zone) -** An imaginary surface extending outward and upward from the periphery of the horizontal surface at a slope of twenty (20) feet horizontally to one (1) foot vertically for a horizontal distance of 4,000 feet. The conical surface zone, as shown on Figure B, is based on the conical surface.

**Department -** Pennsylvania Department of Transportation.

**FAA –** Federal Aviation Administration of the United States Department of Transportation.

**Height –** For the purpose of determining the height limits in all zones set forth in this Ordinance and shown on the zoning map, the datum shall be mean sea level elevation unless otherwise specified.

**Horizontal Surface (Zone) -** An imaginary plane 150 feet above the established airport elevation that is constructed by swinging arcs of various radii from the center of the end of the primary surface and then connecting the adjacent arc by tangent lines. The radius of each arc is based on the planned approach. The horizontal surface zone, as shown on Figure B, is derived from the horizontal surface.

**Larger Than Utility Runway -** A runway that is constructed for and intended to be used by propeller driven aircraft of greater than 12,500 pounds maximum gross weight and jet powered aircraft.

**Nonconforming Use -** Any pre-existing structure, object of natural growth, or use of land that is inconsistent with the provisions of this Ordinance or an amendment thereto.

**Non-Precision Instrument Runway -** A runway having an existing instrument approach procedure utilizing air navigation facilities with only horizontal guidance, or area type navigation equipment, for which a straight-in non-precision instrument approach procedure has been approved or planned.

**Obstruction -** Any structure, growth, or other object, including a mobile object, which exceeds a limiting height set forth by this Ordinance.

**Precision Instrument Runway -** A runway having an existing instrument approach procedure utilizing an Instrument Landing System (ILS) or a Precisions Approach Radar (PAR). It also means a runway for which a precision approach system is planned and is so indicated on an approved airport layout plan or any other planning document.

**Primary Surface (Zone) -** An imaginary surface longitudinally centered on the runway, extending 200 feet beyond the end of paved runways or ending at each end of turf runways. The elevation of any point on the primary surface is the same as the elevation of the nearest point on the runway centerline. The primary surface zone, as shown on Figure B, is derived from the primary surface.

**Runway -** A defined area of an airport prepared for landing and takeoff of aircraft along its length.

**Structure -** An object, including a mobile object, constructed or installed by man, including but without limitation, buildings, towers, cranes, smokestacks, earth formation and overhead transmission lines.

**Transitional Surface (Zone) -** An imaginary surface that extends outward and upward from the edge of the primary surface to the horizontal surface at a slope of seven (7) feet horizontally to one (1) foot vertically (7:1). The transitional surface zone, as shown on Figure B, is derived from the transitional surface.

**Tree -** Any object of natural growth.

**Utility Runway -** A runway that is constructed for and intended to be used by propeller driven aircraft of 12,500 pounds maximum gross weight or less.

**Visual Runway -** A runway intended solely for the operation of aircraft using visual approach procedures.

## 904-C   <u>ESTABLISHMENT OF AIRPORT ZONES</u>

There are hereby created and established certain zones within the Airport District Overlay ordinance, defined in Section 903-B and depicted on Figure B and illustrated on *Wilkes-Barre/Scranton International Airport* Hazard Area Map, hereby adopted as part of this ordinance, that include:

1. Approach Surface Zone
2. Conical Surface Zone
3. Horizontal Surface Zone
4. Primary Surface Zone
5. Transitional Surface Zone

## 905-C  PERMIT APPLICATIONS

As regulated by Act 164 and defined by 14 Code of Federal Regulations Part 77.13(a) (as amended or replaced), any person who plans to erect a new structure, to add to an existing structure, or to erect and maintain any object (natural or manmade), within the Airport Hazard Overlay Zone, *shall first notify the Department's Bureau of Aviation (BOA) by submitting PENNDOT Form AV-57 to obtain an obstruction review of the proposal at least 30 days prior to commencement thereof.* The Department's BOA response must be included with this permit application for it to be considered complete. If the Department's BOA returns a determination of no penetration of airspace, the permit request should be considered in compliance with the intent of this Overlay District Article. If the Department's BOA returns a determination of a penetration of airspace, the permit shall be denied, and the project sponsor may seek a variance from such regulations as outlined in Section 906-B.

No permit is required to make maintenance repairs to or to replace parts of existing structures that do not enlarge or increase the height of an existing structure.

## 906-C  VARIANCE

Any request for a variance shall include documentation in compliance with 14 Code of Federal Regulations Part 77 Subpart B (FAA Form 7460-1 as amended or replaced). Determinations of whether to grant a variance will depend on the determinations made by the FAA and the Department's BOA as to the effect of the proposal on the operation of air navigation facilities and the safe, efficient use of navigable air space. In particular, the request for a variance shall consider which of the following categories the FAA has placed the proposed construction in:

A.  No Objection - The subject construction is determined not exceed obstruction standards and marking/lighting is not required to mitigate potential hazard. Under this determination a variance shall be granted.

B.  Conditional Determination - The proposed construction/alteration is determined to create some level of encroachment into an airport hazard area which can be effectively mitigated. Under this determination, a variance shall be granted contingent upon implementation of mitigating measures as described in Section 909-B, Obstruction Marking and Lighting.

C.  Objectionable - The proposed construction/alteration is determined to be a hazard and is thus objectionable. A variance shall be denied and the reasons for this determination shall be outlined to the applicant.

Such requests for variances shall be granted where it is duly found that a literal application or enforcement of the regulations will result in unnecessary hardship and that relief granted will not be contrary to the public interest, will not create a hazard to air navigation, will do substantial justice, and will be in accordance with the intent of this ordinance.

## 907-C  USE RESTRICTIONS

Notwithstanding any other provisions of this Ordinance, no use shall be made of land or water within the Airport District Overlay in such a manner as to create electrical interference with

navigational signals or radio communications between the airport and aircraft, make it difficult for pilots to distinguish between airport lights and others, impair visibility in the vicinity of the airport, create bird strike hazards or otherwise endanger or interfere with the landing, takeoff or maneuvering of aircraft utilizing the **Wilkes-Barre/Scranton International Airport.**

## 908-C   PRE-EXISTING NON-CONFORMING USES

The regulations prescribed by this Ordinance shall not be construed to require the removal, lowering, or other change or alteration of any structure or tree not conforming to the regulations as of the effective date of this Ordinance, or otherwise interfere with the continuance of a non-conforming use. No non-conforming use shall be structurally altered or permitted to grow higher, so as to increase the non-conformity, and a non-conforming use, once substantially abated (subject to the underlying zoning ordinance,) may only be reestablished consistent with the provisions herein.

## 909-C   OBSTRUCTION MARKING AND LIGHTING

Any permit or variance granted pursuant to the provisions of this ordinance may be conditioned according to the process described in Section 906-B to require the owner of the structure or object of natural growth in question to permit the municipality, at its own expense, or require the person requesting the permit or variance, to install, operate, and maintain such marking or lighting as deemed necessary to assure both ground and air safety.

## 910-C   CONFLICTING REGULATIONS

Where there exists a conflict between any of the regulations or limitations prescribed in this ordinance and any other regulation applicable to the same area, the more stringent limitation or requirement shall govern and prevail.

**Figure B:  Part 77 Surface Areas**



## ARTICLE IX-D

### ADAPTIVE REUSE OF HISTORIC RELIGIOUS BUILDINGS

## 901-D  HISTORIC REUSE

A.  Purpose

This article allows for the adaptive reuse of vacated, historical religious buildings and structures in the Borough in a manner that ensures compatibility with their surroundings and that preserves their historic nature and appearance. This article is intended to promote the preservation of the significant historic religious structures, thereby enhancing the Borough's appearance and preserving its architectural and ethnic legacies for future generations.

B.  Intent

The intent of this article is to enable by Special Exception permit from the Zoning Hearing Board, the creation of alternative uses while maintaining controls to: 1) preserve all exterior features to ensure sensitivity and compatibility with the surrounding neighborhoods; and 2) provide an economic incentive to maintain and rehabilitate historic religious structures.

This article is designed to encourage the adaptive reuse of such structures where such reuse would more effectively preserve and enhance the architectural character of the surrounding neighborhood than would the redevelopment of the site upon demolition or significant exterior modification to these landmark structures.

## 902-D  DEFINITION OF HISTORIC RELIGIOUS BUILDING

For the purpose of this article, historic religious buildings shall be those vacant buildings and structures associated with a religious institution, as defined by Article III, Section I, Section 302, of this Ordinance, that has been closed, vacated, or sold by the religious organization, parish, or diocese that formerly operated the institution.

## 903-D  USES PERMITTED

Any use permitted in the zoning district in which an historic religious building is located shall be permitted as an adaptive reuse. In addition, the following adaptive reuses are allowed by Special Exception and are subject to Zoning Hearing Board approval and land development approval by the Borough Planning Commission and Council:

A.  Apartments or Condominiums
B.  Retirement Housing
C.  Commercial and Professional Offices or Services
D.  Florist
E.  Musical Instrument Repairs
F.  Bed and Breakfast Inn
G.  Antique Shop
H.  Caterer
I.  Publisher
J.  Adult or Child Care Center, Nursery or Preschool
K.  Medical Clinic
L.  Computer/Electronics Services
M.  Commercial Indoor Recreation
N.  Fraternal, Civic, and Social Clubs

The following uses are **expressly prohibited** in historic religious buildings:

A. Adult Businesses
B. Automotive Service Stations
C. Trucking or Warehousing Facilities
D. Retail Sales, except as provided in the above section.
E. Manufacturing Uses

## 904-D  MULTIPLE OR MIXED USES

Any combination of the residential or non-residential uses, as identified in this section, may be allowed by Special Exception provided they are compatible with each other and maintain the public health, safety, and welfare.

## 905-D  DIMENSIONAL CONTROLS

Changes to the size of the building or exterior dimensions of such building shall be subject to the following dimensional controls:

A. An increase in the footprint of the building being considered for reuse will be permitted, provided the proposed increase expands to no more than ten percent (10%) of the existing structure, conforms to minimum setback requirements for the zoning district in which it is located, and is required by one of the following:

1. Conformity with provisions of the Americans with Disabilities Act.
2. Enhancements are needed to make the building functional for the intended use (i.e. elevators, railings, heating/cooling ducts, fire escapes, etc.)

B. Except for the existing building(s), access ways, walkways, parking and loading spaces, the entire site shall be kept as an open area. To the greatest extent possible, such open space shall be left in its existing condition or improved so as to be appropriate in size, shape, dimension, location, and character to assure its proper functioning as an amenity for the site.

C. No permanent additional buildings or structures of any type and no enclosed storage of any kind outside the existing building(s) shall be allowed.

## 906-D  RESTORATION/RENOVATION CONTROLS

A. There shall be no change to the architectural footprint, except as provided for in Section 905-D A. above.

B. External architectural features are to be preserved or restored to their original appearance or as approved by the Zoning Hearing Board.

# ARTICLE X

## OFF-STREET PARKING AND LOADING

### 1001  REQUIRED OFF-STREET PARKING SPACES

It is the intent of this Article to provide adequate off-street parking for all residents, clients, customers and employees of every use.

The following provisions of Schedule III apply to new uses and to any enlargement or expansion of an existing use.

Off-street parking spaces shall be provided and satisfactorily maintained in accordance with the following provisions for each building or use that, after the effective date of this Ordinance, is established, erected, enlarged or altered for any of the following purposes or uses in any district: (For uses not specifically listed, the requirements for the most similar use listed shall be followed. When a use not specifically listed is dissimilar from listed uses, the Borough Zoning Hearing Board shall determine the requirements based upon the intent of this Article as stated above.)

# SCHEDULE III
# OFF-STREET PARKING REQUIREMENTS
(sfgfa = square feet of gross floor area; sf = square feet)

| Land Use | Required Parking Spaces |
|---|---|
| **Residential Uses** | |
| Single-family dwellings | 2 spaces per dwelling unit |
| Two-unit attached dwellings | 2 spaces per dwelling unit |
| Duplex (over/under) | 2 spaces per dwelling unit |
| Townhouses | 2 spaces per dwelling unit |
| Multi-family dwellings, garden apartments | 2 spaces per dwelling unit |
| Planned Residential Development (cluster) | 2 spaces per dwelling unit |
| Mobile Home Parks | 1 space per dwelling unit |
| Group Homes | 1 space per two beds + 1 space per employee on largest shift |
| Rooming and Boarding Houses | 1 space per rental unit + 2 spaces per permanent dwelling unit |
| Bed and Breakfast Inns | 1 space per rental unit + 2 spaces per permanent dwelling unit |
| Assisted Living, Nursing & Personal Care Homes | 1 space per 3 residents + 1 space per employee on largest shift |
| Retirement Housing | 0.75 spaces per dwelling unit |
| Hotels/Motels | 1 space per rental unit + 1 space per 3 three employees on largest shift + 1 space per 400 sf of meeting area + 1 space per 3 seats of restaurant area |
| Conversion from Non-residential Use to Residential Units | 2 spaces per conversion unit |
| Conversion from single-family to duplex/two-unit | 2 spaces per conversion unit |
| | |
| **Commercial Uses** | |
| Adult Businesses | 1 space per 300 sfgfa open to the public |
| Animal Hospital, Kennel or Veterinary Clinic | 1 space per 400 sfgfa; no fewer than 4 spaces |
| Auto Repairs, Service Stations, Auto Body Shops, and Car Washes | Auto Repairs, Service Stations, Body Shops: 1 space per service bay and mechanic <br> Car Wash: two stacking spaces per bay + 1.5 spaces per employee on largest shift |
| Banks, Finance, and Insurance | 1 space per 300 sfgfa + 5 stacking spaces for each drive-through window |
| Banquet Facilities | 1 space per 4 seats at maximum capacity |
| Bicycle Rentals or Sales | 3 spaces per 1,000 sf of showroom or outdoor display area + 1 space per employee on largest shift |
| Boutique Wineries | 1 space per 400 sfgfa open to the public + 1 space per employee on largest shift |
| Bulk Fuel Storage | 1.5 spaces per employee on largest shift |
| Commercial Greenhouses or Nurseries | 1 space per 1,000 sf of sales area |
| Commercial or Professional Offices or Services | 1 space per 300 sfgfa |
| Contractor's Offices and Yards | 1.5 spaces per employee on largest shift |
| Convenient Store with Gas Pumps | 1 space per 200 sfgfa open to the public |
| Flea Markets | 1 space per 500 sf of sales area, indoor or outdoor |
| Funeral Homes or Mortuaries | 1 space per 5 seats at maximum cap. + 1 space per employee on largest shift |
| Horse Stables | 1 space per 3 horses boarded on premise |
| Lumberyards | 3 spaces per 1,000 sf of sales area + 1 space per employee on largest shift |
| New or Used Car, Motorcycle, Moped, ATV, or Trailer Rentals or Sales | 3 spaces per 1,000 sf of showroom or outdoor display area + 1 per employee on largest shift |

| Land Use | Required Parking Spaces |
|---|---|
| Restaurants, Cafes or Coffee Houses | 1 space per every 3 seats + 1 space per 2 employees on largest shift + 5 stacking spaces for each drive-through window (if applicable)<br>Carry-out Restaurant: no fewer than 5 spaces |
| Retail Businesses | 1 space per 300 sfgfa |
| Self-Storage Facilities | 1 space per 10 storage units + 1 space per employee on largest shift |
| Shopping Malls, Centers or Plazas | 1 space per 300 sf of leaseable area |
| Transit-Related Businesses and Maintenance Facilities | 1.5 spaces per employee on largest shift |
| Wholesale Businesses | 1 space per 800 sfgfa |
| Wine Tasting Rooms | 1 space per 400 sf open to the public |

| Manufacturing Uses | |
|---|---|
| Industry, Heavy | 1 space per 1,000 sfgfa |
| Industry, Light | 1 space per 1,000 sfgfa |
| Junk Yards & Automobile Wrecking | 1.5 spaces per employee on largest shift + a minimum of 2 visitor spaces |
| Machine Shops | 1.5 spaces per employee on largest shift + a minimum of 2 visitor spaces |
| Recycling Facilities | 1.5 spaces per employee on largest shift + a minimum of 2 visitor spaces |
| Research Laboratories | 1.5 spaces per employee on largest shift + a minimum of 2 visitor spaces |
| Sawmills | 1.5 spaces per employee on largest shift + a minimum of 2 visitor spaces |
| Slaughterhouses | 1.5 spaces per employee on largest shift + a minimum of 2 visitor spaces |
| Solid Waste Facilities | 1.5 spaces per employee on largest shift + a minimum of 2 visitor spaces |
| Tire Re-treading and Recapping | 1.5 spaces per employee on largest shift + a minimum of 2 visitor spaces |
| Warehousing or Distribution | 1 space per 2,000 sfgfa |

| Services & Public Uses | |
|---|---|
| Abused Person Shelters | 1 space per 3 sleeping rooms + 1 space per employee on largest shift |
| Adult or Child Day Care Centers or Nursery Schools and Preschools | 1 space per employee on largest shift + 1 space per 6 clients/students at maximum designed capacity |
| Colleges and Dormitories | Colleges: 1 space per 3 employees/faculty + 1 space per 3 students not residing on campus.<br>Dormitories: Spaces equal to 75% of maximum designed occupancy. |
| Drug or Other Treatment Centers | 1 space per 2 beds + 1 space per employee on largest shift |
| Hospitals | 1 space per 5 beds + 1 space per 2 employees on largest shift + 1 space per doctor on staff |
| Medical Clinics & Social Services | 1 space per examination room + 1 space per employee on largest shift + 1 space per doctor on staff |
| Public and Semi-Public Buildings & Uses | Non-School Public or Semi-Public Building: 1 space per 400 sfgfa open to public + 1 space per employee on largest shift.<br>Public or Private Elementary/Middle School: 1 space per teacher and staff member + 1 space per classroom.<br>Public or Private High School: 1 space per teacher and staff member + 5 spaces per classroom. |
| Religious Institutions | 1 space per 4 seats + 1 space per 200 sf of meeting room area + 1 space per 2 employees |
| Social Services | 1 space per 300 sfgfa |
| Television/Radio Stations Publishing & Information Services | 5 spaces + 1 space per employee on largest shift |
| Trade & Technical Schools | 1 space per 2 students based on maximum designed capacity + 1 space per instructor and/or employee |

| Land Use | Required Parking Spaces |
|---|---|
| **Recreational Uses** | |
| Campgrounds | 1 space per camp site |
| Commercial Indoor Recreation | Amusement Arcade: 1 space per 300 sfgfa + 1 space per 2 game machines.<br>Billiard Hall: 2 spaces per table.<br>Bowling Alley: 5 spaces per alley + 1 space per employee on largest shift.<br>Health or Membership Club: 1 space per 2 patrons based on maximum designed capacity + 1 space per employee on largest shift.<br>Indoor Courts: 3 spaces + 2 spaces per court.<br>Indoor Swimming Pools: 1 space per 75 sf of water area.<br>Indoor Skating Rinks, Shoot Ranges, Gymnasium: 1 space per 300 sfgfa. |
| Cultural Facilities, Galleries and Libraries | 1 space per 400 sfgfa + 1 space per employee on largest shift |
| Fraternal, Civic, or Social Clubs | 1 space per 300 sfgfa |
| Outdoor Recreation, Entertainment, and Sports | Amusement Park: 1 space per 300 sfgfa of enclosed buildings + spaces equal to 33% of maximum capacity of outdoor facilities.<br>Arena or Stadium: 1 space per 3 seats (bench capacity computed at 1 seat for each 36" of bench length).<br>Golf Course, Drive Range, or Miniature Golf: 2 spaces per hole and/or tee + 1 space per 2 employees on largest shift.<br>Groves and/or Outing Facilities: Spaces equal to 10% of active recreation area.<br>Shooting or Archery Range: 1 space per target area.<br>Racetrack or Cart-Track: 1 space per seats (bench capacity computed at 1 seat for each 36" of bench length).<br>Tennis Courts: 2 spaces per court.<br>Zoos: 1 space per 2000 sf of land area. |
| Theaters | 1 space per 3 seats (bench capacity computed at 1 seat for each 36" of bench length) + 1 space per 2 employees on largest shift |
| | |
| **Resource Production and Extraction Uses** | |
| Agricultural Products Processing | 1.5 spaces per employee on largest shift + a minimum of 2 visitor spaces |
| Power Facility | 1.5 spaces per employee on largest shift + a minimum of 2 visitor spaces |
| Mineral and Natural Resource Processing | 1.5 spaces per employee on largest shift + a minimum of 2 visitor spaces |
| Water Extraction & Bottling | 1.5 spaces per employee on largest shift + a minimum of 2 visitor spaces |

## 1002 GENERAL REGULATIONS APPLYING TO REQUIRED OFF-STREET PARKING FACILITIES

A. Existing Parking

Structures and uses in existence at the effective date of this Ordinance shall not be subject to the requirements of this Article so long as the kind or extent of use is not changed, provided that any parking facility now serving such structures or uses shall not in the future be reduced to an amount less than that required by this Ordinance.

B. Fractional Space

Where the computation of required parking spaces results in a fractional number, the fraction of one quarter or more shall be counted as one.

C. Changes in Use

Whenever a building or use is changed or enlarged in floor area, number of employees, number of dwellings, seating capacity or otherwise to create a need, based upon the requirements of Schedule III, for an increase of ten percent (10%) or more in the number of existing parking spaces, the number of additional spaces to be provided shall be based upon the incremental change or enlargement.

– 161 –

D.   Conflict with Other Uses

No parking area shall be used for any other use that interferes with its availability for the parking need it is required to serve.

E.   Continuing Character of Obligation

All required parking facilities shall be provided and maintained so long as the use that the facilities were designed to serve still exists. Off-street parking facilities shall not be reduced in total extent except when such reduction is in conformity with the requirements of this Article in conjunction with a change in the nature of the use.

F.   Joint Use

Two or more uses may provide for required parking in a common parking lot; the total number of spaces in such lot shall be not less than the sum of the spaces required for each use individually, unless such lot is provided as otherwise specified in this section.

G.   Mixed Uses

Where a permitted use contains or includes more than one of the types of uses identified in Schedule III, the number of parking spaces required shall be computed according to the most restrictive parking requirements.

H.   Location of Parking Spaces

Required off-street parking spaces shall be on the same lot or premises with the principal use served, or where this requirement cannot be met, shall be provided within a radius of four hundred feet (400') from the zone lot with the principal use served, and provided further, that required spaces off the site in accordance with the provisions set forth herein and that such spaces shall be in the same ownership as the use to which they are accessory and shall be subject to deed restrictions filed in an office of record, binding the owner and his heirs and/or assigns to maintain the required number of spaces available throughout the life of such use, and such spaces shall conform to all regulations of the zone district in which they are located.

I.   Modification of Parking Requirements

The Zoning Hearing Board may authorize a modification, reduction, or waiver of the off-street parking requirements in exceptional cases of use, zone lot size or shape, or other unusual situations.

J    C-2 Central Business District Exemption

Uses identified as allowable as Permitted Uses (Special Exceptions and Conditional Uses excluded) in Schedule I of this Ordinance that are located within the C-2 zone district shall be exempt from providing required off-street parking facilities.

## 1003   DESIGN STANDARDS FOR OFF-STREET PARKING FACILITIES

A.   Applicability

All off-street parking areas shall be designed in accordance with the regulations established by the Americans with Disabilities Act (ADA).

The additional design standards specified in this Section shall be mandatory for all new off-street parking facilities with a capacity of four (4) or more vehicles.

B.  **General Requirement**

   Such facilities shall be designed so that their use shall not constitute a nuisance, or hazard, or unreasonable impediment to traffic

C.  **Space and Aisle Dimensions**

   All parking spaces shall have a total stall area of no less than one hundred eighty (180) square feet. The minimum parking aisle width for 90ºF parking shall be twenty-four feet (24'); for 45º parking it shall be fifteen feet (15') and for 30º parking it shall be eighteen feet (18'). Handicapped-accessible parking spaces shall not be designed for 45º or 30º parking.

D.  **Accessibility**

   Parking areas shall be designed so that each motor vehicle may proceed to and from the parking space provided for it without requiring the moving of any other motor vehicle. Garage and/or carport bays shall not be considered parking spaces when providing for the required minimum residential parking spaces.

E.  **Entrance and Exit Drives**

   The width of entrance and exit drives shall be a minimum of twelve feet (12') and maximum of fifteen feet (15') at the curb line for one-way use only and a minimum of twenty feet (20') and maximum of thirty feet (30') at the curb line for two-way use. Driveways entering state highways shall meet PennDOT regulations and a Highway Occupancy Permit shall be acquired from PennDOT. Driveways entering county-owned roadways shall meet county regulations and a permit shall be acquired from the county.

F.  **Access Points**

   At least forty feet (40') shall be provided between access points and no access point shall be closer than thirty feet (30') from any street intersection.

G.  **Design**

   Parking areas shall be arranged and marked for orderly, safe movement. No parking areas shall be designed to require or encourage parked vehicles to back into a public street in order to leave a parking space.

H.  **Grading, Surface, Drainage**

   Except for areas that are landscaped and so maintained, all portions of required parking facilities, including driveways, shall be surfaced with a 4" sub-base, a 2" bituminous base course and 1" bituminous wearing course (or similar durable and dustless surface), graded and drained to dispose of all surface water.

I.  **Nighttime Illumination**

   All driveways, aisles, maneuvering spaces, vehicular service areas or spaces between or about buildings, designed for use by more than four (4) cars after dusk, other than those related to an individual dwelling, shall be illuminated in accordance with Section 814 of this Ordinance.

J.      Separated from Street

Except where entrance and exit drives cross street lines, all parking areas for any purpose other than residential uses as defined by this Ordinance shall be physically separated from any public street by a concrete curb.

K.      Landscaping and Screening

Perimeter landscaping shall be required along any side of a parking lot of ten (10) or more spaces that abuts adjoining developed property that is not a right-of-way. A landscaping strip a minimum five feet (5') in width shall be located between the parking area and the abutting property lines. In addition to perimeter landscaping, interior landscaping shall be required for parking lots of twenty-five (25) or more spaces, in accordance with the design criteria as required by the Olyphant Borough Subdivision and Land Development Ordinance.

L.      Maintenance

The owners and their agencies shall be responsible for providing, protecting, and maintaining all parking lot landscaping in healthy and growing condition, replacing it when necessary and keeping it free of refuse and debris.

## 1004   OFF-STREET LOADING

A.      General Requirement

Every building or use that requires the receipt or distribution of material or merchandise by vehicles shall provide at least one (1) off-street loading berth and shall also provide additional berths in accordance with Schedule IV of this Ordinance.

B.      Minimum Size and Location

Each off-street loading and unloading space shall be a minimum of twelve feet (12') wide by forty-five feet (45') long and fourteen feet (14') in height, and, in addition, have sufficient maneuvering room separate from other parking to eliminate traffic conflicts within off-street loading and parking areas.

**SCHEDULE IV**
**OFF-STREET LOADING BERTH REQUIREMENTS**
**(in addition to §1004 A.)**

| USES | SQUARE FEET GROSS FLOOR AREA | ADDITIONAL REQUIRED LOADING BERTHS |
|------|------------------------------|-------------------------------------|
| Schools, Public or Private | 15,000 or more | 1 |
| | | |
| Hospitals (in addition to ambulance space) | 10,000 – 30,000 | 1 |
| | For each additional 30,000 or major fraction thereof | 1 |
| | | |
| Funeral Homes or Mortuaries | >5,000 | 1 |
| | For each additional 5,000 or major fraction thereof | 1 |
| | | |
| Hotels/Motels & Professional Offices | >15,000 | 1 |
| | | |
| Commercial Uses, Wholesale, Manufacturing Uses, & Storage Facilities | 15,000 – 25,000<br>25,000 – 40,000<br>40,000 – 60,000<br>60,000 – 100,000 | 1<br>2<br>3<br>4 |
| | For each additional 50,000 or major fraction thereof | 1 additional |

## 1005  RESIDENTIAL DRIVEWAYS AND SIDEWALK OPENINGS

The maximum width of driveways and sidewalk openings measured at the street lot line shall be thirty feet (30'); the minimum width shall be ten feet (10').

## 1006  COMMERCIAL VEHICLE PARKING

A.   In the R-districts, off-street parking of the following commercial vehicles shall be prohibited:

1.   Tractors
2.   Tractor-Trailers
3.   Commercial machinery & equipment
4.   Buses

B.   In the R- and S-zoning districts and on residential property in any zoning district, the engine of a tractor-trailer shall not be idled for more than ten (10) minutes between the hours of 10 PM and 6 AM or be repaired, except for clearly emergency repairs.

C.   No trailer of a tractor-trailer shall be parked, stored, or maintained in the R-districts and on residential property in any zoning district for more than eight (8) hours in any forty-eight (48) hour period.

– 165 –

## 1007  RECREATIONAL VEHICLE PARKING

A maximum of one (1) **uninhabited** recreational vehicle in transportable condition may be stored or parked on a lot outside of an enclosed structure provided that the following are met:

A.  The recreational vehicle must be owned by: 1) the occupants of the property upon which the recreational vehicle is located; or 2) any authorized visitors of the property occupants.

B.  The recreational vehicle shall not be stored in any yard abutting a street that would obstruct the clear-sight triangle or vehicle sight line.

C.  Recreational vehicles that have a height of eight feet (8') or more shall not be parked or stored in the front yard of any property in an R-district. Such vehicles may be parked or stored in R-districts in the side or rear yard of the property to which they are accessory, provided that the parking site of such vehicle meets the minimum side- and/or rear-yard setback requirement for a principal structure in the applicable zone district.

**ARTICLE XI**

**NON-CONFORMING USES, STRUCTURES, AND LOTS**

**1101 STATEMENT OF INTENT**

A.  The zoning districts established by this Ordinance are designed to guide the future use of land in the Borough by encouraging the development of desirable residential, commercial, agricultural, and manufacturing areas, with appropriate groupings of compatible and related uses, to the end of promoting and protecting the public health, safety, comfort, prosperity and other aspects of the general welfare.

To achieve this end, lawful existing uses that would be prohibited or restricted under the terms of this Ordinance, or future amendments, and that do not conform to the character and regulations of the zoning district in which they are located must be subject to certain limitations. The regulations set forth below are intended to provide a gradual remedy for the undesirable conditions resulting from indiscriminate mixing of uses, and to afford a means whereby nonconforming uses can be gradually eliminated and reestablished in more suitable locations within the Borough. Similarly, lots, buildings or other structures that do not comply with one or more of the applicable district requirements as to lot width, minimum lot area and yard spaces, building coverage or height, etc. are deemed to be nonconforming.

B.  To avoid undue hardship, nonconforming uses of land, buildings, and structures shall generally be permitted to remain; the purpose of regulating non-conforming uses, which are not appropriate for their location, is to restrict further investment, when economically reasonable, in such non-conforming uses. Exceptions shall be made in those instances where extensive investment is involved to avoid any unnecessary harassment or hardship in the use of such facilities.

C.  To eliminate any undue hardship, nothing in this Ordinance shall be deemed to require any change in plans, specifications, construction or intended use of any building or structure for which plans, specifications and contract negotiations, or construction has started, prior to the effective date of this Ordinance, or amendments thereof.

**1102 CONTINUATION OF USE**

A.  A use, building or structure that shall be made nonconforming, as defined in Section 302, at the time of passage of this Ordinance, or any applicable amendment thereto, may be continued except as otherwise set forth in this Article.

B.  A use, building or structure in existence at the time of passage of this Ordinance shall be considered nonconforming if the yards, area, height, coverage, dimensions, off-street parking, or other conditions do not conform with the regulations for the zoning district (as enumerated in Article VI) in which the use, building or structure is located.

**1103 REGULATION OF NONCONFORMING USES**

An existing nonconforming use or structure cannot be enlarged, reconstructed, substituted or structurally altered unless required to do so by law, order, or as follows:

A.  Enlargement

1.  Any nonconforming use or structure may be enlarged up to, but not more than twenty-five percent (25%) of its floor area as to a structure and/or lot area as to a nonconforming use, as it existed at the time of passage of this Ordinance. Such enlargement must conform to all other regulations of the zoning district where it is

– 167 –

situated. This enlargement provision may be used only once for any nonconforming use or structure. The Zoning Officer shall make a record of the expansion and register the nonconforming use at the time of expansion.

2. If more than one (1) structure exists on a property or properties containing a nonconforming use, the twenty-five percent (25%) expansion allowed by §1103 A. 1. above shall be applied to one (1) structure only.

3. No new principal structures shall be allowed as part of an enlargement of a nonconforming use.

4. Any nonconforming use or structure shall not, however, be expanded into a more restrictive zoning district than where it is located. In terms of restrictiveness the R-1 zoning district shall be considered the most restrictive followed by the R-2, S, C-1, C-2, C-2A, IAC, M-1, M-2, CM-1, CM-2 as the least restrictive.

5. Any nonconforming use or structure may be enlarged or expanded in accordance with §1103 A. 1. above onto a new property of record only if that property is immediately adjacent to the existing location, the properties were both under the same ownership as of the effective date of this Ordinance, and the owner has clearly exhausted all alternatives available for enlargement or expansion on the existing property. Said properties shall be legally combined through a lot consolidation plan approved by the Borough in accordance with the Borough Subdivision and Land Development Ordinance should an expansion need to occur on the neighboring lot.

B. Repairs and Maintenance

1. Normal maintenance repairs and incidental alteration of a building or other structure containing a non-conforming use is permitted, provided it does not extend the area or volume of space occupied by the nonconforming use.

2. A building or other structure containing residential nonconforming uses may be altered in any way to improve interior livability, provided that no structural alterations shall be made that would increase the number of dwelling units or the bulk of the building.

C. Displacement and Change of Use

1. A nonconforming use may be changed into a conforming use.

2. A nonconforming use shall not be changed into a use that is permitted in a less restrictive zoning district than the zoning district where the nonconforming use is first permitted. In terms of restrictiveness the R-1 zoning district shall be considered the most restrictive followed by the R-2, S, C-1, C-2, C-2A, IAC, M-1, M-2, CM-1, CM-2 as the least restrictive.

3. A nonconforming use may be changed into another nonconforming use only if permitted by the Zoning Hearing Board as a Special Exception and subject to the following conditions:

   a. The applicant shall show that the nonconforming use cannot reasonably be changed to a conforming use.

   b. The applicant shall show that the proposed change will be equally or less objectionable in external effects than the existing nonconforming use, or more appropriate than the existing nonconforming use with regard to:

1). Traffic generation and congestion.
2). Nuisance elements as regulated under Section §809 of this Ordinance.
3). Hours and manner of operation.
4). Appearance.
5). Impact on the surrounding neighborhood or general public welfare.

4. A nonconforming use shall not be extended to displace a conforming use.

5. Buildings or structures, regardless of conformity or ownership, shall not be combined for the purpose of extending an existing nonconforming use, or for creating a different nonconforming use.

D. <u>Restoration</u>

When a nonconforming building is partially or totally destroyed by fire, explosion or other disaster, it may be restored to its original use provided the owner of the structure secures a zoning and building permit within six (6) months of such incident, unless extended an additional six (6) months, and the structure must be totally restored within one (1) year of the permit issuance, unless the owner requests an extension in writing not less than thirty (30) days prior to the end of the one-year period. Such extension shall be for a period of one (1) year, and a maximum of two (2) extensions may be requested.

Should the owner of the structure not comply with the time limits for restoring the structure, any future restoration or reconstruction of the structure and use must conform to the regulations of the zoning district, unless authorized as a special exception by the Zoning Hearing Board.

E. <u>Termination</u>

1. When abandoned or discontinued for a period of one (1) year or more, a nonconforming use as defined by Section 302 of this Ordinance shall be terminated. (See Section 302 for definition of Abandonment). If, however, in the opinion of the Zoning Hearing Board after a Special Exception hearing requested by the owner/applicant, the structure is not substandard and the design of the structure does not lend itself to conversion to a conforming use, this provision shall not apply.

2. Change to a conforming use shall be considered an abandonment of the nonconforming use, and such nonconforming use shall be terminated and cannot be reestablished.

F. <u>Approval Granted Prior to Passage of Ordinance</u>

A building, structure, or use that does not conform to this Ordinance, and where construction of such building, structure or use has not yet commenced but has been issued a zoning permit or that has obtained a preliminary subdivision or land development plan approval in compliance with existing laws prior to the passage of this Ordinance shall be deemed a legal nonconforming use. Should construction of such building, structure or use fail to commence prior to the expiration of the zoning permit and/or preliminary subdivision or land development plan approval period, the nonconforming use shall be considered terminated at the time of the permit or plan approval expiration. A nonconforming building, structure, or use approved prior to the passage of this ordinance as part of a final subdivision or land development plan shall be considered terminated if said final plans are not recorded in the office of the Lackawanna County Recorder of Deeds within the time period as required by the Pennsylvania Municipalities Planning Code, Act 247, as amended.

## 1104  NONCONFORMING LOTS

A.    Any principal-permitted use may be erected on any existing nonconforming vacant lot of record, provided that all district regulations regarding minimum yards, maximum lot coverage, and maximum building height; Specific Use Development Requirements; and Supplemental Provisions are met.

B.    Minimum side and rear yard requirements as provided for under §603 Schedule II may be reduced by fifty percent (50%) of the minimum requirement on any existing nonconforming vacant lot of record.

C.    Minimum side and rear yard requirements as provided for under §603 Schedule II may be reduced by fifty percent (50%) of the minimum requirement for any additions to existing structures on any existing nonconforming lot of record.

D.    Any principal-permitted use that requires larger minimum lot dimensions (Article VII) than those required by §603 Schedule II of this Ordinance shall not be permitted on nonconforming vacant lots of record.

## 1105  ZONING DISTRICT CHANGES

Whenever the boundaries of a zoning district are changed so as to transfer an area from one district to another district, the provisions of this Article IX shall apply to any nonconforming uses, structures, or lots existing in the district to which the area was transferred.

## 1106  CHANGE IN OWNERSHIP

Change in ownership of a nonconforming use, structure, or lot shall not affect its nonconformance status and shall be allowed to continue as the use, structure, or lot existed prior to the change in ownership.

## ARTICLE XII

## ADMINISTRATION AND ENFORCEMENT

### 1201  GENERAL PROCEDURE

A.  Sequence of Permit Steps

Under the terms of this Ordinance, all new construction, alterations or changes in type of occupancy must be made in conformance with the requirements contained in this ordinance. All persons desiring to undertake such new construction, alterations or changes shall conform to the following general procedure, as well as to all other applicable provisions of this Ordinance.

1.  Application for Permit. The applicant shall apply to the Zoning Officer for a Zoning Permit and Certificate of Compliance by filling out the appropriate application and by submitting the required fee.

2.  Issuance of Zoning Permit. If the applicant's proposed action is in compliance with the regulations contained in this Ordinance, a Zoning Permit shall be issued by the Zoning Officer either on his own authority or, in certain cases as described below, after referral to the Zoning Hearing Board, Borough Council or to the Planning Commission.

3.  Action in Accordance with Zoning Permit. After receipt of the Zoning Permit and any other applicable permits, the applicant may proceed to undertake the construction, alteration or change in use permitted by the Zoning Permit.

4.  Inspection by Zoning Officer. After completion of the construction, alteration or change in use, and before occupancy takes place on the premises, the Zoning Officer inspects the premises and issues a Certificate of Compliance if the actions are in accordance with the Zoning Permit.

5.  Issuance of Certificate of Compliance. The receipt of the Compliance Certificate by the applicant ensures the right to continue the use as approved.

B.  Zoning Permit Types

Under the terms of this Ordinance, six (6) general classes of Zoning Permits may be issued that complies with the appropriate sections of this Ordinance. Each of these classes requires a different procedural action as described below:

1.  Permitted Use. An application for a "Permitted Use" Zoning Permit requires the review of the Zoning Officer, who determines whether the proposed construction, alteration or change in use is in accordance with the requirements of this Ordinance. The Zoning Officer then either issues or refuses to issue a Zoning Permit accordingly.

2.  Special Exception. An application for a "Special Exception" Zoning Permit must be referred to the Zoning Hearing Board and to the Planning Commission by the Zoning Officer. The Zoning Officer is not empowered to make an independent decision on this matter, although he may submit recommendations to the Zoning Hearing Board and to the Planning Commission. The Planning Commission reviews the application and analyzes the proposed "Special Exception" to determine compliance with the provisions of this Ordinance. The Planning Commission then gives its recommendations to the Zoning Hearing Board, which shall hold a hearing pursuant to public notice and make the final decision on the "Special Exception." The Zoning

– 171 –

Hearing Board shall then notify the Zoning Officer to either issue or refuse a Zoning Permit accordingly.

3.  <u>Conditional Use</u>. An application for a "Conditional Use" Zoning Permit must be referred to the Planning Commission by the Zoning Officer. The Zoning Officer is not empowered to make an independent decision on this matter, although the Zoning Officer may submit recommendations to the Planning Commission. The Planning Commission shall review the application and analyze the proposed "Conditional Use" to determine compliance with the provisions of this Ordinance. The Planning Commission shall submit its recommendations to the Borough Council, which shall hold a hearing pursuant to public notice and make the final decision and notify the Zoning Officer to either issue or refuse the Zoning Permit accordingly.

4.  <u>Zoning Permit after an Appeal</u>. The applicant may appeal any action taken by the Zoning Officer by submitting an application for an appeal to the Zoning Officer and to the Secretary of the Zoning Hearing Board. The Zoning Hearing Board shall give public notice of the date for a hearing to review the application to determine if the Zoning Officer has acted properly. After the hearing, and after reaching its decision, the Zoning Hearing Board shall order the Zoning Officer to either issue or refuse a Permit accordingly.

5.  <u>Permit After a Variance Request</u>. Where the applicant feels that there are practical difficulties or unnecessary hardships in the way of carrying out the strict letter of this Ordinance the applicant may apply for a variance by submitting an application requesting such variance to the Zoning Officer and to the Secretary of the Zoning Hearing Board. The Zoning Hearing Board shall give public notice of the date for a hearing to review the application for a variance. After the hearing and after reaching its decision, the Zoning Hearing Board shall order the Zoning Officer to issue or refuse the Zoning Permit accordingly.

6.  <u>Permit After Request for Reclassification or Amendment</u>. Where an applicant feels that the Zoning Ordinance is in need of change in any part, the applicant may petition the Borough Council to consider an amendment to the ordinance. Such a petition shall be referred to the Planning Commission and County Planning Commission for their recommendations. The Borough Council shall then, after public notice, hold a public hearing on the proposed amendment. After the hearing, the Borough Council shall make their decision on the proposed amendment. If the amendment is adopted the applicant can then proceed to apply for a Zoning Permit in the manner applicable to the type of use that the applicant wishes to propose.

## 1202 **ZONING OFFICER**

A.  <u>Appointment</u>

The Zoning Officer shall be appointed by the Borough Council and shall not hold any elective office in the Borough. The Zoning Officer shall continue to serve the Borough until such time as the Borough Council declares otherwise. The Zoning Officer shall meet any qualifications established by the Borough Council and shall be able to demonstrate to their satisfaction a working knowledge of municipal zoning regulations.

B.  <u>Administration and Enforcement</u>

The provisions of this Ordinance shall be administered by the Zoning Officer. The Zoning Officer shall have the following duties and powers:

1. <u>Inform Applicants</u>. The Zoning Officer shall provide information for prospective applicants as to the type of form to be filed, the information to be submitted, and explain the procedures for filing applications. Such information shall be offered as a public service and no charge shall be made for such service.

2. <u>Form of Applications, Permits and Certificates</u>. The form of all applications, permits and certificates to be used by the Zoning Officer under the terms of this Ordinance shall be prescribed by the Borough. Said applications, permits and certificates may be combined with other applications, permits and certificates required by the Uniform Construction Code.

3. <u>Receive Applications</u>. The Zoning Officer shall receive and examine all applications for permits and certificates required under the terms of this Ordinance.

4. <u>Issue Permits</u>. The Zoning Officer shall issue the zoning permit for the construction, alteration, or change of use, and certificates of compliance that are in accordance with the requirements of this Ordinance within thirty (30) days of the receipt of the applications for such permit or certificate.

5. <u>Refuse Permits</u>. The Zoning Officer shall refuse applications for permits or certificates that are not in accordance with the requirements of this Ordinance within thirty (30) days of the receipt of such application. Said refusal shall be in writing and shall state the reasons for such action.

6. <u>Issue Notice of Violation</u>. The Zoning Officer shall make a written notice of a violation and issue the same by certified mail on the person, firm or corporation violating any provisions of this Ordinance in accordance with §1209 of this Ordinance. A copy of said notice of violation shall be forwarded to the Borough Council.

7. <u>Keep Records</u>. The Zoning Officer shall keep records of applications, permits or certificates issued or denied, of variances granted, of inspections made, or reports rendered and of notices of violations issued.

8. <u>Monthly Report</u>. The Zoning Officer shall submit a monthly report to the Borough Council on the number of applications made, or permits or certificates issued or denied, of variances granted, of inspections made, of reports rendered, of notices of violations issued, and of any other information requested by the Borough Council.

9. <u>Other Powers and Duties</u>. The Zoning Officer shall perform all other duties as may be provided or made necessary by the terms of this Ordinance.

## 1203 <u>ZONING HEARING BOARD</u>

A. <u>Creation of Zoning Hearing Board</u>
The Zoning Hearing Board of the Borough of Olyphant is hereby created (also referred to as the "Board") as set forth in the Pennsylvania Municipalities Planning Code, as amended.

B. <u>Appointment and Terms of Members</u>

The Zoning Hearing Board shall consist of five (5) residents of the Borough appointed by resolution of the Borough Council. The terms of office of the five-member Zoning Hearing Board shall be five (5) years and shall be so fixed that the term of office of one (1) member shall expire each year. The Zoning Hearing Board shall promptly notify the Borough Council of any vacancies that occur and any appointment to fill any vacancy shall be only for the unexpired portion of the term.

The Borough Council may also appoint, by resolution, up to (3) residents of the Borough to serve as alternate members of the Zoning Hearing Board. The term of office of the alternate members shall be three (3) years. An alternate member of the Zoning Hearing Board may participate in any proceeding or discussion of the Zoning Hearing Board but shall not be entitled to vote as a member of the Zoning Hearing Board nor be compensated unless designated by the chairman of the Zoning Hearing Board as a voting alternate member.

All members and alternate members of the Zoning Hearing Board shall hold no other elected or appointed office or position in the Borough nor shall any member or alternate member be an employee of the Borough.

C.    Jurisdiction

The zoning hearing board shall have exclusive jurisdiction to hear and render final adjudications in the following matters:

1.    Substantive challenges to the validity of any land use ordinance, except those brought before the governing body pursuant to sections 609.1 and 916.1(a) (2) of the Pennsylvania Municipalities Planning Code (MPC), Act 247, of 1968 as reenacted and amended.

2.    Appeals from the determination of the zoning officer, including, but not limited to, the granting or denial of any permit, or failure to act on the application thereof, the issuance of any cease and desist order or the registration or refusal to register any nonconforming use, structure or lot.

3.    Appeals from a determination by a municipal engineer or the zoning officer with reference to the administration of any flood plain or flood hazard ordinance or such provisions within a land use ordinance.

4.    Applications for variances from the terms of the zoning ordinance and flood plain management ordinance or such provisions within a land use ordinance, pursuant to §1206 hereof.

5.    Applications for special exceptions under the zoning ordinance or flood plain or flood hazard ordinance or such provisions within a land use ordinance, pursuant to §1207 hereof.

6.    Appeals from the determination of any officer or agency charged with the administration of any transfers of development rights or performance density provisions of the zoning ordinance.

7.    Appeals from the zoning officer's determination under section 916.2 of the MPC.

8.    Appeals from the determination of the zoning officer or municipal engineer in the administration of any land use ordinance or provision thereof with reference to sedimentation and erosion control and storm water management insofar as the same relate to development not involving applications under the Borough's subdivision and land development ordinance.

D.    Other Duties and Powers

The Zoning Hearing Board shall perform such other duties as may be provided or made necessary by this Ordinance including the following:

1.      To authorize the Zoning Officer to issue Zoning Permits for Special Exceptions, Variances, and Certificates of Nonconformance.

2.      To hold hearings in accordance with Section 908 of the Pennsylvania Municipalities Planning Code, as amended.

3.      To authorize the termination of a nonconforming use pursuant to Article XI.

4.      To refer any pertinent matter to the Planning Commission for review and recommendation, and defer any decision thereon for a period of not more than thirty (30) days from the date of referral to the Planning Commission, pending a report from the Commission.

5.      To maintain a record of all decisions and the findings upon which said decisions shall be based.

E.      <u>Organization</u>

1.      The Zoning Hearing Board shall elect from its own membership its officers, who shall serve annual terms as such and may succeed themselves. For the conduct of any hearing and the taking of any action, a quorum shall be not less than a majority of all the members of the Board, but the Board may appoint a hearing officer from its own membership to conduct any hearing on its behalf and the parties may waive further action by the Board as provided in §1209 hereof. The Board may make, alter and rescind rules and forms for its procedure, consistent with ordinances of the Borough and laws of the Commonwealth. The Board shall keep full public records of its business, which records shall be the property of the Borough and shall submit a report of its activities to the Governing Body as requested by the Governing Body.

2.      If, by reason of absence or disqualification of a member, a quorum is not reached, the chairman of the board shall designate as many alternate members of the board to sit on the board as may be needed to provide a quorum. Any alternate member of the board shall continue to serve on the board in all proceedings involving the matter or case for which the alternate was initially appointed until the board has made a final determination of the matter or case. Designation of an alternate pursuant to this section shall be made on a case-by-case basis in rotation according to declining seniority among all alternates.

F.      <u>Conflict of Interest</u>

A Board member shall be disqualified from any matter before the board in which the member has:

1.      A direct personal or financial interest.
2.      Signed a petition relating to the matter before the board.
3.      Expressed any bias, prejudice or individual opinion on the matter before the board, prior to the hearing and/or pending of a decision.

G.      <u>Referral to Planning Commission</u>

The Zoning Hearing Board shall refer any applications or appeals that in the opinion of the Zoning Hearing Board require review by the Commission.

Upon receipt of such an application from the Zoning Hearing Board, the Planning Commission shall review the application and recommend approval, disapproval, or approval subject to conditions or modifications and shall submit a written report to the Zoning

Hearing Board stating all recommended conditions and modifications and the reasons for such approval or disapproval.

H.    Removal of Members

Any Zoning Hearing Board member may be removed for malfeasance, misfeasance or nonfeasance in office or for any other just cause by a majority vote of the Borough Council taken after the Zoning Hearing Board member has received fifteen (15) days advance notice of the intent to take such a vote. A hearing shall be held in connection with the vote if the Zoning Hearing Board member shall request it in writing.

## 1204  PERMITS AND CERTIFICATES

A.    Zoning Permits

The purpose of the Zoning Permit is to determine compliance with the provision of this Ordinance, and no person shall erect, structurally alter, or convert any structure, building or part thereof, nor alter the use of any land, subsequent to the adoption of this Ordinance, until a Zoning Permit has been issued by the Zoning Officer.

1.    Application for Permits. All applications for Zoning Permits shall be in writing and on forms furnished by the Zoning Officer and shall be accompanied by a site plan and required fee.

2.    Permits to be Shown. Zoning Permits shall be issued in duplicate and one (1) copy shall be kept conspicuously on the premises affected whenever construction work is being performed thereon. No owner, contractor, workman or other person shall perform construction work of any kind unless a Zoning Permit covering such work has been previously issued, and is being displayed as required by this Ordinance, nor shall construction work of any kind be conducted on the subject premises after notification of the revocation of said Zoning Permit. The Zoning Permit shall be valid for a period of one (1) year for the construction or work to commence. If no construction or work commences within a one-year period from the date of issuance of the zoning permit, such permit shall no longer be valid and a new application for a permit (Subsection 1. above) shall be required.

3.    Revocation of Permits. The Zoning Officer may revoke a Zoning Permit at any time if it appears that the application or accompanying plan is false or misleading, or that work being done upon the premises differs materially from that called for in the application. In such a case, the person holding the permit shall immediately surrender it and all copies thereof to the Zoning Officer. Before issuing a new Zoning Permit, the Zoning Officer may require the applicant to file an indemnity bond in favor of the Borough with sufficient surety conditioned for compliance with this Ordinance and all building laws and ordinances then in force and in a sum sufficient to cover the cost of removing the building if it does not so comply.

B.    Certificate of Compliance

A Certificate of Compliance, issued in duplicate, certifying that the premises complies with the provisions of this Ordinance and may be used for the purposes set forth in the permit, shall be issued by the Zoning Officer after inspection and prior to the use of any building or structure, or part thereof, for which a Zoning Permit is required, or for any change of use of any existing building or structure or part thereof, or for any change of land use. A record shall be kept of all Certificates of Compliance, and the original applications shall be kept on file in the office of the Zoning Officer.

1. <u>Application for Certificate of Compliance</u>. Application for a Certificate of Compliance shall be made in writing on a form furnished by the Zoning Officer setting forth such facts as the Zoning Officer may require.

2. <u>Permit Shall Continue</u>. Any Certificate of Compliance once granted shall continue in effect so long as there is no change of use, regardless of change of owners, tenants or occupants.

## 1205 <u>APPEALS</u>

A. <u>Appeal from Decision of Zoning Officer</u>

1. Any person, officer of the Borough, or firm or corporation that deems itself aggrieved by any order of the Zoning Officer shall have the right to file a written appeal to the Zoning Hearing Board within thirty (30) days of the issuance of said order. Such appeal shall contain the information required in §1205 D. and a duplicate copy shall be sent to the Zoning Officer. The Zoning Officer shall transmit to the Zoning Hearing Board all papers constituting the record upon which the action appealed from was taken.

2. It shall be competent for the Zoning Officer to recommend to the Zoning Hearing Board a modification or reversal of this action in cases where he believes substantial justice requires the same but where the Zoning Officer does not have the authority to grant the relief sought. The Zoning Hearing Board shall conduct a hearing and render a decision on the appeal pursuant to the requirements and time limits prescribed in §1209 of this Ordinance. Any party may appear in person or be represented by an agent or attorney.

B. <u>Expiration of Appeal Decision</u>

Unless otherwise specified by the Zoning Hearing Board, a decision on any appeal or request for a variance shall expire if the applicant fails to obtain any necessary Zoning Permit, or comply with the conditions of said authorized permit within one (1) year from the date of authorization thereof.

C. <u>Stay of Proceedings</u>

Upon filing of any proceeding during its pendency before the Zoning Hearing Board, all land development pursuant to any challenged ordinance, order or approval of the Zoning Officer or any agency or body, and all official action there under shall be stayed unless the Zoning Officer or any other appropriate agency or body certifies to the Zoning Hearing Board facts indicating that such stay would cause imminent peril to life or property, in which case the development or official action shall not be stayed otherwise than by a restraining order, which may be granted by the Zoning Hearing Board or by the court having jurisdiction of zoning appeals on petition after notice to the Zoning Officer or other appropriate agency or body. When an application for development, preliminary or final, has been duly approved and proceedings designed to reverse or limit the approval are filed with the Zoning Hearing Board by persons other than the applicant, the applicant may petition the court having jurisdiction of zoning appeals to order such persons to post bond as a condition to continuing the proceedings before the Zoning Hearing Board. After the petition is presented, the court shall hold a hearing to determine if the filing of the appeal is frivolous and is for the purpose of delay. At the hearing evidence may be presented on the merits of the case. After consideration of all evidence presented, if the court determines that the appeal is frivolous and is for the purpose of delay it shall grant the petition. The right to petition the court to order the appellants to post bond maybe waived by the appellee but such waiver may be revoked by him if an appeal is taken from a final decision of the court. The question

whether or not such petition should be granted and the amount of the bond shall be within the sound discretion of the court.

D.  Information Required on Appeals to the Zoning Hearing Board

All appeals and applications to the Zoning Hearing Board shall be in writing on forms prescribed by the Zoning Hearing Board. Every appeal or application shall include the following:

1.  The name, address, and phone number of the applicant, or appellant.

2.  The name, address, and phone number of the owner of the parcel to be affected by such proposed change, or appeal.

3.  Tax map number (a.k.a. Property Identification Number) of the affected parcel.

4.  Names and addresses of all adjacent property owners within three hundred feet (300') of the affected parcel.

5.  A brief description and location of the parcel to be affected by such proposed change, or appeal.

6.  A statement of the present zoning classification of the parcel in question, the improvements thereon and the present use thereof.

7.  A statement of the section of this Ordinance under which the appeal is made, and reasons why it should be granted or a statement of the section of this Ordinance governing the situation in which the alleged erroneous ruling is being appealed, and the reasons for this appeal.

8.  A reasonable accurate description of the present improvements, and the additions or changes intended to be made under this application, indicating the size of such proposed improvements, material, and general construction thereof. In addition, there shall be attached a plot plan of the real property to be affected, indicating the location and size of the lot and size of improvements existing thereon and proposed to be erected thereof.

## 1206 **VARIANCES**

The Zoning Hearing Board shall hear requests for variances where it is alleged that the provisions of the zoning ordinance inflict unnecessary hardship upon the applicant. The zoning hearing board may by rule prescribe the form of application and may require preliminary application to the zoning officer. The zoning hearing board may grant a variance, provided that all of the following findings are made where relevant in a given case:

A.  That there are unique physical circumstances or conditions, including irregularity, narrowness, or shallowness of lot size or shape, or exceptional topographical or other physical conditions peculiar to the particular property and that the unnecessary hardship is due to such conditions and not the circumstances or conditions generally created by the provisions of the zoning ordinance in the neighborhood or district in which the property is located.

B.  That because of such physical circumstances or conditions, there is no possibility that the property can be developed in strict conformity with the provisions of the zoning ordinance and that the authorization of a variance is therefore necessary to enable the reasonable use of the property.

– 178 –

C.      That such unnecessary hardship has not been created by the appellant.

D.      That the variance, if authorized, will not alter the essential character of the neighborhood or district in which the property is located, nor substantially or permanently impair the appropriate use or development of adjacent property, nor be detrimental to the public welfare.

E.      That the variance, if authorized, will represent the minimum variance that will afford relief and will represent the least modification possible of the regulation in issue.

In granting any variance, the Zoning Hearing Board may attach such reasonable conditions and safeguards as it may deem necessary to implement the purposes of the Pennsylvania Municipalities Planning Code and this Ordinance, and to protect the public health, safety, and welfare.

Upon approval of a variance, the Zoning Hearing Board shall direct the Zoning Officer to issue a permit to the applicant, which permit shall authorize the applicant to proceed with development in accordance with the terms of the approved variance.

Variances shall be valid for a period of one (1) year from the date of approval. If the proposed development or use for which the variance was granted is not commenced within one (1) year of approval, the applicant shall submit a new application for a variance and shall require approval thereof.

## 1207   <u>SPECIAL EXCEPTIONS</u>

A.      <u>Board Action</u>

Special Exceptions, as enumerated in §502 of this Ordinance, shall be permitted only upon authorization by the Zoning Hearing Board. The Zoning Officer shall refer such applications to the Planning Commission for their review and recommendations. The Board shall hear and decide requests for special exceptions in accordance with the standards and criteria set forth herein. In granting a special exception, the board may attach such reasonable conditions and safeguards, in addition to those expressed in this ordinance, as it may deem necessary to implement the purposes of this zoning ordinance and Act 247 as amended.

B.      <u>Review Criteria</u>

Approval of special exceptions shall be authorized only if they are found to comply with the following requirements and other applicable requirements as set forth in this Ordinance.

1.      That the use is a permitted Special Exception in the applicable zoning district as set forth in Schedule I hereof.

2.      That the use is so designed, located and proposed to be operated that the public health, safety, welfare and convenience will be protected.

3.      That the use will not cause substantial injury to the value of other property in the neighborhood where it is to be located.

4.      That the use shall be compatible with adjoining development and the character of the neighborhood where it is proposed to be located.

5.      That adequate landscaping and screening is provided as required in §806 and §808 of this Ordinance and as otherwise provided herein.

– 179 –

6. That adequate off-street parking and loading is provided and ingress and egress is so designed as to cause minimum interference with traffic on abutting streets.

7. That the use conforms to all applicable regulations governing the use, as specified herein.

8. That such use shall not result in unsafe traffic conditions, traffic congestion or other dangerous traffic conditions.

C. <u>Affect of Filing an Application</u>

When an application for a special exception has been filed with the Zoning Hearing Board, and the subject matter of such application would ultimately constitute either a "land development" as defined in Section 107 or a "subdivision" as defined in Section 107 of the PA Municipalities Planning Code, Act 247, as amended, no change or amendment of the zoning, subdivision or other governing ordinance or plans shall affect the decision on such application adversely to the applicant and the applicant shall be entitled to a decision in accordance with the provisions of the governing ordinances or plans as they stood at the time the application was duly filed. Provided, further, should such an application be approved by the Zoning Hearing Board, the applicant shall be entitled to proceed with the submission of either land development or subdivision plans within a period of six (6) months or longer or as may be approved by the Zoning Hearing Board following the date of such approval in accordance with the provisions of the governing ordinance or plans as they stood at the time the application was duly filed before the Zoning Hearing Board. If either a land development or subdivision plan is so filed within said period, such plan shall be subject to the provisions of Section 508 (1) through (4) of the PA Municipalities Planning Code, Act 247, as amended, and specifically to the time limitations of Section 508 (4) which shall commence as of the date of filing such land development or subdivision plan.

## 1208 <u>CONDITIONAL USES BEFORE THE BOROUGH COUNCIL</u>

A. <u>Procedure</u>

Conditional uses shall be allowed only upon a determination by the Borough Council that they comply with the standards and criteria set forth herein. The governing body shall hold hearings on and decide requests for conditional uses in accordance with the standards and criteria set forth herein. The hearing shall be conducted by the governing body or the governing body may appoint any member or an independent attorney as a hearing officer. The decision shall be made by the governing body. However, the applicant, in addition to the Borough, may, prior to the decision of the hearing, waive decision by the governing body and accept the decision of the hearing officer as final. In granting a conditional use, the governing body may attach such reasonable conditions and safeguards, in addition to those expressed in the ordinance, as it may deem necessary to implement the purposes of this ordinance.

B. <u>Timing and Administrative Procedures</u>

1. The governing body shall render a written decision on the conditional use application within 45 days after the last hearing before the governing body. Where the application is contested or denied, each decision shall be accompanied by findings of fact or conclusions based thereon, together with any reasons therefore. Conclusions based on any provisions of any ordinance, rule or regulation shall contain a reference to the provision relied on and the reasons why the conclusion is deemed appropriate in the light of the facts found.

2. Where the governing body fails to render the decision within the period required by this subsection or fails to commence, conduct or complete the required hearing as provided in Section 908 (1.2) of the MPC, the decision shall be deemed to have been rendered in favor of the applicant unless the applicant has agreed in writing or on the record to an extension of time. When a decision has been rendered in favor of the applicant because of the failure of the governing body to meet or render a decision as hereinabove provided, the governing body shall give public notice of the decision within ten days from the last day it could have met to render a decision. If the governing body shall fail to provide such notice, the applicant may do so.

3. Nothing in this subsection shall prejudice the right of any party opposing the application to appeal the decision to a court of competent jurisdiction. A copy of the final decision shall be delivered to the applicant personally or mailed to him no later than the day following its date. Delivery of the decision shall be in a manner that provides the Borough Council with evidence of receipt of the decision by the applicant.

4. The Borough Council may, upon a review of the application including the environmental assessment, establish such additional requirements for the development and the operation of the conditional use as may be required to protect the public health, safety and general welfare of the community; provided, however, that such additional requirements shall not be related to off-site transportation or road improvements.

5. Application for a Conditional Use shall be referred to the Planning Commission for review; and, no such application shall be finally authorized until the Planning Commission has submitted its review findings, or until 30 days after referral to the Planning Commission, whichever occurs first.

6. No Conditional Use shall be authorized without a hearing thereon. Hearings shall be conducted pursuant to §1209 hereof.

C. <u>Review Criteria</u>

Approval of conditional uses shall be authorized only if they are found to comply with the following requirements and other applicable requirements as set forth in this Ordinance.

1. That the use is so designed, located and proposed to be operated that the public health, safety, welfare and convenience will be protected.

2. That the use will not cause substantial injury to the value of other property in the neighborhood where it is to be located.

3. That the use shall be compatible with adjoining development.

4. That adequate landscaping and screening is provided as required in §806 and §808 and as otherwise provided herein.

5. That adequate off-street parking and loading is provided and ingress and egress is so designed as to cause minimum interference with traffic on abutting streets.

6. That the use is compatible with the Borough's Comprehensive Plan.

7. An environmental assessment shall be submitted with all applications for conditional uses in accordance with §1208 D. hereof.

D.   Environmental Assessment

1.   All applications for a Conditional Use must be accompanied by an Environmental Assessment as specified herein; provided, however, that upon the request of the developer, components of the Environmental Assessment may be waived by the Borough Council when such components are deemed unnecessary for certain Conditional Uses.

2.   The purpose of the Environmental Assessment is to provide the Borough Council with sufficient information to determine if the proposed use will be harmful or beneficial to the Borough; and to determine corrective actions if needed to mitigate potential adverse environmental impacts.

3.   Due to the importance of securing professional, objective data in the Environmental Assessment, the selection of the professionals to be engaged in its preparation shall be subject to the approval of the Borough Council. The developer will further provide the Borough Council with assurances, adequate to protect the Borough from violations of non-compliance with measures required to mitigate identified adverse environmental impacts.

4.   Content of the Environmental Assessment

     a.   Description of the Proposal

        Describe the proposed or recommended actions, its purpose, where it is to be located, when it is proposed to take place, and its interrelationship with other projects or proposals, including information and technical data sufficient to permit assessment of environmental impact by the Borough.

     b.   Description of the Environment

        Include a comprehensive description of the existing environment without the proposal and the probable future environment with the proposal. This description should focus both on the environmental details most likely to be affected by the proposal and on the broader regional aspects of the environment, including ecological interrelationships. Particular attention should be given to the potential effects of past or present use of the site as a repository for toxic or hazardous wastes.

     c.   The Environmental Impact of the Proposed Activities

        Describe the environmental impacts of the proposed action. These impacts are defined as direct or indirect changes in the existing environment, both beneficial and detrimental. Whenever possible these impacts should be quantified. This discussion should include the impact not only upon the natural environment but upon land use as well. Provide separate discussion for such potential impacts as man-caused accidents and natural catastrophes and their probabilities and risks. Specific mention should also be made of unknown or partially understood impacts.

     d.   Mitigating Measures Included in the Proposed Action

        Include a description of measures which are proposed to be taken or which are required to be taken to enhance, protect, or mitigate impacts upon the environment, including any associated research or monitoring.

e. <u>Any Adverse Effects That Cannot be Avoided Should the Proposal be Implemented</u>

Include a discussion of the unavoidable adverse impacts described in 1208 D. 4. c. & d. above, and an analysis of whom or what will be affected and the degree of impact.

f. <u>The Relationship between Local Short-Term Use of Man's Environment and the Maintenance and Enhancement of Long-Term Productivity</u>

Describe the local short-term use of the environment involved in the proposed action in relation to its cumulative and long-term impacts and give special attention to its relationship to trends of similar actions which would significantly affect ecological interrelationships or pose long-term risk to health or safety. Short-term and long-term do not refer to any fixed time period, but should be viewed in terms of the various significant ecological and geophysical consequences of the proposed action.

g. <u>Any Irreversible and Irretrievable Commitments of Resources Which Would be Involved in the Proposed Action Should it be Implemented</u>

Describe, and quantify where possible, any irrevocable uses of resources, including such things as resource extraction, erosion, destruction of archaeological or historical sites, elimination of endangered species' habitat, and significant changes in land use.

h. <u>Alternatives to the Proposed Action</u>

Identify alternatives to the proposed action, and describe the environmental impacts, both beneficial and adverse, of the various alternatives considered.

5. <u>Outline Considerations for Developing Environmental Assessment</u>

a. <u>Description of the Proposal</u>

1) Who is proposing the action?

2) What is the nature of the action to be taken?

3) What is it designed to accomplish? What identified needs will be met and to what degree?

4) Where will it take place?

5) When will it take place? Indicate phasing of acquisition and development activities, if applicable, and timetables for completion.

6) How does it fit in with local Planning efforts, comprehensive plans, etc.

b. <u>Description of the Environment</u>

1) Present and past land uses of the site and of the surrounding area.

2) Special topographic features which may be present.

3) Describe the site's surface and subsurface geologic characteristics.

    4)    Describe the nature of the soils in the area, particularly their fertility and susceptibility to erosion.

    5)    Describe the area's water resources, with specific reference to ground water, water quality, aquifers and aquifer recharge areas, and areas subject to flooding.

    6)    Describe the area's vegetation, including species composition, distribution, commercial utility and aesthetics. Special reference should be made to unusual or unique species.

    7)    Describe the nature of existing transportation routes in the immediate area and the accessibility to the project site.

c.    <u>Environmental Impact of the Proposed Action</u>

    1)    What will be the effect on land uses in the area?

    2)    Will the project affect a site listed on the National Register of Historic Places?

    3)    In what way will soils and topography be affected? Consider such things as soil compaction, erosion, exposure of slopes, excavation which may create unstable slope/soil configurations, cutting and filling, removal of topsoil, paving, loss of existing natural landscape qualities, blockage of view lines to landmarks, blockage of view corridors, etc.

    4)    Will solid wastes be generated? How and where will they be disposed of? Indicate what types and volumes will be generated and how and where it will be stored prior to disposal and method of disposal. Discuss removal of clearance, demolition, and construction wastes.

    5)    How will water resources be affected? Consider the water table, runoff, sewer systems, rivers and streams, water supply, etc. Indicate content of any effluent which will be discharged. Address loss of floodwater absorption capacity in natural absorption areas, effects on stream volume, velocity, and seasonal flows, diversion or blockage of surface water, alterations of natural watercourses, introduction or increase of effluents or toxic, hazardous, or radioactive substances to runoff or water bodies, effects on aquatic life, any blockage or impairment of access to watercourses, effects on groundwater recharge, release of groundwater supply, withdrawal of groundwater supplies, blockage of groundwater flow, contamination of groundwater supply, effect on water temperatures, sedimentation, changes in levels of water bodies.

    6)    How will vegetation be affected? Discuss the removal of ground cover, loss of valuable local species, loss of wildlife habitat, introduction of vegetation which will spread to adjacent lands, introduction of exotic vegetation, creation of areas of highly visible, drying, or decaying vegetation.

    7)    How will fauna be affected? Consider habitat destruction, reduction of population, impact caused by human intrusion, mobility restrictions, food chains, etc.

8) How will transportation routes be affected? Consider congestion, hazards, capacities of affected roads and intersections and traffic to be generated, generation of truck traffic.

9) Effect on air quality and ambient noise level? Include what odors will originate; types and concentrations of gases, vapors, particulates, and smoke; noise and vibration levels at property lines and the level of heat and/or glare. Indicate levels of electromagnetic radiation at property lines. Indicate effects on local temperatures and wind circulation and whether there are any plants, animals, or materials in the area that are particularly susceptible to expected emissions. Indicate the nature, concentration and quantity of radioactive material to be discharged to the environment, pathways for entering the environment, dose to populations and biota, and possible concentrations through food chains.

10) Describe management practices proposed for the area.

d. Mitigating Measures Included in the Proposed Action

Describe actions or measures which will be taken to avoid or alleviate adverse environmental effects. Include reference to erosion control methods and adherence to air, noise or water pollution control techniques and standards.

e. Unavoidable Adverse Effects

If adverse effects have been identified under other sections of the Environmental Impact Study and cannot be mitigated, they should be again identified here. Describe who or what will be affected, and to what degree. Quantify wherever possible.

f. Relationship between the Local Short-Term Use of Man's Environment and the Maintenance and Enhancement of Long-Term Productivity

What are the impacts of the proposal in the context of other similar projects? In what way will future generations be affected by the currently proposed actions?

How do the immediate and long-range impacts on the area with the project compare with the immediate and long-range impacts without the project?

g. Any Irreversible and Irretrievable Commitments of Resources

Describe any irrevocable commitments of resources resulting from implementation of the proposal. An evaluation must be made of the extent to which the proposed action curtails or restricts the range of possible resources uses. Such commitments may occur because of resources extraction, erosion, destruction of archaeological, geological or historic features, destruction of fragile habitat or endangered species habitat, unalterable changes in land use, and resources used in project development.

h. Alternatives to the Proposed Action

Identify alternatives which may be considered, including modification of the present proposal and different approaches to gaining the same result.

The beneficial and adverse effects of the alternatives should be discussed, along with the reasons for rejection. Where appropriate, consideration should be given to alternate construction methods which may avoid environmental degradation.

## 1209 HEARINGS

The Zoning Hearing Board, or Borough Council if applicable, shall conduct hearings and make decisions in accordance with the following requirements:

A. Public notice shall be given, and written notice shall be given to the applicant, the zoning officer, adjacent property owners, and to any person who has made timely request for the same. Written notice shall be given to the applicant by electronic or U.S. mail. All others shall be given written notice in a manner prescribed by the governing body. In addition to the written notice provided herein, written notice of said hearing shall be conspicuously posted on the affected tract of land at least one week prior to the hearing.

B. The governing body may prescribe reasonable fees with respect to hearings before the zoning hearing board. Fees for said hearings may include compensation for the secretary and members of the zoning hearing board, notice and advertising costs and necessary administrative overhead connected with the hearing. The costs, however, shall not include legal expenses of the zoning hearing board, expenses for engineering, architectural or other technical consultants or expert witness costs.

C. The first hearing before the board or hearing officer shall be commenced within 60 days from the date of receipt of the applicant's application, unless the applicant has agreed in writing to an extension of time. Each subsequent hearing before the board or hearing officer shall be held within 45 days of the prior hearing, unless otherwise agreed to by the applicant in writing or on the record. An applicant shall complete the presentation of his case-in-chief within 100 days of the first hearing. Upon the request of the applicant, the board or hearing officer shall assure that the applicant receives at least seven hours of hearings within the 100 days, including the first hearing. Persons opposed to the application shall complete the presentation of their opposition to the application within 100 days of the first hearing held after the completion of the applicant's case-in-chief. An applicant may, upon request, be granted additional hearings to complete his case-in-chief provided the persons opposed to the application are granted an equal number of additional hearings. Persons opposed to the application may, upon the written consent or consent on the record by the applicant and Borough, be granted additional hearings to complete their opposition to the application provided the applicant is granted an equal number of additional hearings for rebuttal.

D. The hearings shall be conducted by the board or the board may appoint any member or an independent attorney as a hearing officer. The decision, or, where no decision is called for, the findings shall be made by the board; however, the appellant or the applicant, as the case may be, in addition to the Borough, may, prior to the decision of the hearing, waive decision or findings by the board and accept the decision or findings of the hearing officer as final.

E. The parties to the hearing shall be the Borough, any person affected by the application who has made timely appearance of record before the board, and any other person including civic or community organizations permitted to appear by the board. The board shall have power to require that all persons who wish to be considered parties enter appearances in writing on forms provided by the board for that purpose.

F. The chairman or acting chairman of the board or the hearing officer presiding shall have power to administer oaths and issue subpoenas to compel the attendance of witnesses and

the production of relevant documents and papers, including witnesses and documents requested by the parties.

G. The parties shall have the right to be represented by counsel and shall be afforded the opportunity to respond and present evidence and argument and cross-examine adverse witnesses on all relevant issues.

H. Formal rules of evidence shall not apply, but irrelevant, immaterial, or unduly repetitious evidence may be excluded.

I. The board or the hearing officer, as the case may be, shall keep a stenographic record of the proceedings. The appearance fee for a stenographer shall be shared equally by the applicant and the board. The cost of the original transcript shall be paid by the board if the transcript is ordered by the board or hearing officer or shall be paid by the person appealing from the decision of the board if such appeal is made, and in either event the cost of additional copies shall be paid by the person requesting such copy or copies. In other cases the party requesting the original transcript shall bear the cost thereof.

J. The board or the hearing officer shall not communicate, directly or indirectly, with any party or his representatives in connection with any issue involved except upon notice and opportunity for all parties to participate, shall not take notice of any communication, reports, staff memoranda, or other materials, except advice from their solicitor, unless the parties are afforded an opportunity to contest the material so noticed and shall not inspect the site or its surroundings after the commencement of hearings with any party or his representative unless all parties are given an opportunity to be present.

K. The board or the hearing officer, as the case may be, shall render a written decision or, when no decision is called for, make written findings on the application within 45 days after the last hearing before the board or hearing officer. Where the application is contested or denied, each decision shall be accompanied by findings of fact and conclusions based thereon together with the reasons therefor. Conclusions based on any provisions of this act or of any ordinance, rule or regulation shall contain a reference to the provision relied on and the reasons why the conclusion is deemed appropriate in the light of the facts found. If the hearing is conducted by a hearing officer and there has been no stipulation that his decision or findings are final, the board shall make his report and recommendations available to the parties within 45 days and the parties shall be entitled to make written representations thereon to the board prior to final decision or entry of findings, and the board's decision shall be entered no later than 30 days after the report of the hearing officer. Except for challenges filed under section 916.1 of the Pennsylvania Municipalities Planning Code where the board fails to render the decision within the period required by this subsection or fails to commence, conduct or complete the required hearing as provided in subsection C. of this section, the decision shall be deemed to have been rendered in favor of the applicant unless the applicant has agreed in writing or on the record to an extension of time. When a decision has been rendered in favor of the applicant because of the failure of the board to meet or render a decision as hereinabove provided, the board shall give public notice of said decision within ten days from the last day it could have met to render a decision in the same manner as provided in subsection A. of this section. If the board shall fail to provide such notice, the applicant may do so. Nothing in this subsection shall prejudice the right of any party opposing the application to appeal the decision to a court of competent jurisdiction.

L. A copy of the final decision or, where no decision is called for, of the findings shall be delivered to the applicant personally or mailed to him not later than the day following its date. To all other persons who have filed their name and address with the board not later than the last day of the hearing, the board shall provide by mail or otherwise, brief notice of

the decision or findings and a statement of the place at which the full decision or findings may be examined.

## 1210   AMENDMENTS

The Borough Council may, on its own motion or by petition, amend, supplement, change, modify or repeal this Ordinance, including the Zoning Map, by proceedings in accordance with Section 609 of the Pennsylvania Municipalities Code, as amended.

## 1211   LANDOWNER CURATIVE AMENDMENTS

A landowner who desires to challenge on substantive grounds the validity of this Ordinance or Zoning Map, or any provision thereof, that prohibits or restricts the use or development of land in which he has an interest may do in accordance with Section 609.1 of the Pennsylvania Municipalities Planning Code, as amended (MPC).

## 1212   MUNICIPAL CURATIVE AMENDMENTS

If the Borough determines that this Zoning Ordinance or any portion thereof is substantially invalid, it shall take action as prescribed in Section 609.2 of the Pennsylvania Municipalities Planning Code, as amended (MPC).

## 1213   ENFORCEMENT AND VIOLATIONS

A.   Complaints of Violations

Whenever a violation of this Ordinance occurs, any person may file a complaint in regard thereto. All such complaints must be in writing and shall be filed with the Zoning Officer, who shall properly record such complaint and immediately investigate and report thereon.

B.   Enforcement Procedures

1.   Enforcement Notice

a.   If it appears to the Borough that a violation of this zoning ordinance has occurred, the Borough shall initiate enforcement proceedings by sending an enforcement notice as provided in this section.

b.   The enforcement notice shall be sent to the owner of record of the parcel on which the violation has occurred, to any person who has filed a written request to receive enforcement notices regarding that parcel, and to any other person requested in writing by the owner of record.

c.   An enforcement notice shall be mailed to the alleged violator by certified mail and shall state at least the following:

1)   The name of the owner of record and any other person against whom the Borough intends to take action.

2)   The location and tax map number (a.k.a. Property Identification Number) of the property in violation.

3)   The specific violation with a description of the requirements that have not been met, citing in each instance the applicable provisions of the Ordinance.

– 188 –

4) The date before which the steps for compliance must be commenced and the date before which the steps must be completed.

5) That the recipient of the notice has the right to appeal to the zoning hearing board within the prescribed period of time and in accordance with procedures set forth in §1205 hereof.

6) That failure to comply with the notice within thirty (30) days of the date of said notice, unless extended by appeal to the zoning hearing board, constitutes a violation, with possible sanctions clearly described.

2. <u>Causes of Action</u>

In case any building, structure, landscaping, or land is or is proposed to be, erected, constructed, reconstructed, altered, converted, maintained or used in violation of this ordinance, the governing body, or with the approval of the governing body an officer of the Borough, or any aggrieved owner or tenant of real property who shows that his property or person will be substantially affected by the alleged violation, in addition to other remedies, may institute any appropriate action or proceeding to prevent, restrain, correct or abate such building, structure, landscaping or land, or to prevent, in or about such premises, any act, conduct, business or use constituting a violation. When any such action is instituted by a landowner or tenant, notice of that action shall be served upon the Borough at least 30 days prior to the time the action is begun by serving a copy of the complaint on the governing body of the Borough. No such action may be maintained until such notice has been given.

3. <u>Appeals</u>

Any recipient of a notice of enforcement shall have the right to appeal to the zoning hearing board to remove such notice. Such appeals, however, must be filed with the zoning hearing board not more than ten (10) business days following the receipt of such an enforcement notice.

C. <u>Enforcement Remedies</u>

1. Magisterial district judges shall have initial jurisdiction over proceedings brought under this subsection C.

2. Any person, firm or corporation who or which has violated or permitted the violation of any of the provisions of this Zoning Ordinance shall, upon being found liable therefore in a civil enforcement proceeding commenced by the Borough, pay a judgment of not more than $500.00 plus all court costs, including reasonable attorney fees incurred by the Borough as a result thereof. No judgment shall commence or be imposed, levied or be payable until the date of the determination of a violation by the magisterial district judge. If the defendant neither pays nor timely appeals the judgment, the Borough may enforce the judgment pursuant to the applicable rules of civil procedure. Each day that a violation continues shall constitute a separate violation, unless the magisterial district judge determining that there has been a violation further determines that there was a good faith basis for the person, partnership or corporation violating the Ordinance to have believed that there was no such violation until the fifth day following the date of the determination of a violation, in which event there shall be deemed to have been only one such violation until the fifth day following the date of the determination by the magisterial district judge and thereafter each day that a violation continues shall constitute a separate

violation. All judgments, costs and reasonable attorney fees collected for the violation of this Zoning Ordinance shall be paid over to the Borough.

3.     The court of common pleas, upon petition, may grant an order of stay, upon cause shown, tolling the per diem judgment pending a final adjudication of the violation and judgment.

4.     Nothing contained in this section shall be construed or interpreted to grant to any person or entity other than the Borough, the right to commence any action for enforcement pursuant to this section.

D.     <u>Actions Initiated Prior to Passage of Ordinance</u>

The passage of this Ordinance shall not automatically suspend any pending actions instituted one (1) year or less prior to said passage against any person, firm, or corporation accused to be in violation of Borough zoning laws existing prior to said passage. Before any proceedings may be suspended, an appropriate legal determination must be made as to whether or not the person, firm or corporation is also in violation of this Ordinance. If it is ruled that the person, firm, or corporation is not in violation of this Ordinance then the action may be suspended; if the ruling is otherwise, then the proceedings shall continue as instituted.

E.     <u>Fees</u>

As authorized by Section 617.2(e) and Section 908(1.1) of the Pennsylvania Municipalities Planning Code (MPC), the Borough Council shall establish by resolution a uniform schedule of fees, charges and expenses, as well as a collection procedure, for zoning permits, zoning hearing board and Borough Council proceedings, and other matters pertaining to this Ordinance.

Permits shall be issued only after fees have been paid in full, and the Zoning Hearing Board or Borough Council shall take no action on appeals, variances, special exceptions, and/or conditional uses until all fees have been paid in full.

The appearance fee for a stenographer at hearing proceedings shall be shared equally by the applicant and the Borough. The cost of the original transcript shall be paid by the Borough, or shall be paid by the Borough if the transcript is ordered by the Zoning Hearing Board, or shall be paid by the person appealing from the decision of the Zoning Hearing Board if such appeal is made, and in either event, the cost of additional copies shall be paid by the person requesting the copy or copies. In other cases, the party requesting the original transcript shall bear the cost.

## 1214   APPEALS TO COURTS

The procedure set forth in Article X-A of the Pennsylvania Municipalities Planning Code as amended (MPC) shall constitute the exclusive mode for securing review of any decision rendered pursuant to Article XII of this Ordinance, or deemed to have been made under the jurisdiction of the Pennsylvania Municipalities Planning Code as amended (MPC).