## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DAVE BLILER; CHELSEA BLILER;
and PAIGE BLILER,

            *Plaintiffs*,

     v.

OLYPHANT BOROUGH,
Pennsylvania; and WILLIAM SHIGO,
in his official capacity as Zoning
Officer for Olyphant Borough,
Pennsylvania,

            *Defendants*.

Case No.

## MEMORANDUM IN SUPPORT OF
## MOTION FOR PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

INTRODUCTION ................................................................... 1

BACKGROUND .................................................................... 2

  I.   THE BOROUGH'S SIGN ORDINANCE .................................... 2

  II.  THE BLILERS' SIGN ...................................................... 4

ARGUMENT ....................................................................... 6

  I.   THE BLILERS ARE LIKELY TO SUCCEED ON THE MERITS ............. 6

    A. The Ordinance's Numerical and Size Restrictions on Signs are
       Unconstitutional ........................................................ 6

      1.  The Ordinance's numerical and size restrictions on signs are
          content based. ...................................................... 7

      2.  The Ordinance's numerical and size restrictions do not satisfy
          strict scrutiny. ................................................... 10

        i.  Traffic safety and aesthetics are not compelling interests. ............. 10

        ii.  The Ordinance is not narrowly tailored. ........................... 11

      3.  The Ordinance's numerical and size restrictions on signs do not
          satisfy intermediate scrutiny. ...................................... 14

    B. The Ordinance's Permitting Regime is Unconstitutional ................ 15

      1.  The Ordinance's permitting regime impermissibly grants the
          Borough the unbridled discretion to grant or deny permits. ............. 15

      2.  The Ordinance's permitting regime fails under intermediate
          scrutiny. ......................................................... 17

  II.  THE EQUITABLE FACTORS ARE DECIDELY IN THE BLILERS'
    FAVOR ................................................................. 19

CONCLUSION .................................................................... 21

# TABLE OF AUTHORITIES

**Cases**

*Amalgamated Transit Union Loc. 85 v. Port Auth. of Allegheny Cnty.*,
39 F.4th 95 (3d Cir. 2022) ................................................................. 6

*Arlington Cnty. Republican Comm. v. Arlington Cnty*,
983 F.2d 587 (4th Cir. 1993) ......................................................... 13, 15

*B.H. ex rel. Hawk v. Easton Area Sch. Dist.*,
725 F.3d 293 (3d Cir. 2013) ............................................................. 19

*Baldwin v. Redwood City*,
540 F.2d 1360 (9th Cir. 1976) .......................................................... 18

*Bantam Books, Inc. v. Sullivan*,
372 U.S. 58 (1963) ......................................................................... 16

*Bd. of Regents of Univ. of Wisconsin Sys. v. Southworth*,
529 U.S. 217 (2000) ......................................................................... 9

*Camp Hill Borough Republican Association v. Borough of Camp Hill*,
2023 WL 2692400 (M.D. Penn. March 29, 2023) ............................... 10

*Church of Lukumi Babalu Aye, Inc. v. City of Hialeah.*,
508 U.S. 520 (1993) ....................................................................... 11

*Citizens for Free Speech, LLC v. Cnty. of Alameda*,
194 F. Supp. 3d 968 (N.D. Cal. 2016) ................................................ 9

*Citizens United v. Fed. Election Comm'n*,
558 U.S. 310 (2010) ......................................................................... 8

*City of Austin v. Reagan Nat'l Advert. of Austin, LLC*,
596 U.S. 61 (2022) ........................................................................... 7

*City of Cincinnati v. Discovery Network, Inc.*,
507 U.S. 410 (1993) ....................................................................... 12

*City of Ladue v. Gilleo*,
512 U.S. 43 (1994) ................................................................... passim

*City of Lakewood v. Plain Dealer Publishing Co.*,
 486 U.S. 750 (1988). ...............................................................................16

*Clark v. Cmty. for Creative Non-Violence*,
 468 U.S. 288 (1984) ................................................................................14

*Curry v. Prince George's Cnty.*,
 33 F. Supp. 2d 447 (D. Md. 1999)....................................................... 17, 18, 19

*Diener v. Reed*,
 232 F. Supp. 2d 362 (M.D. Pa. 2002) ..................................................19

*Elrod v. Burns*,
 427 U.S. 347 (1976) ................................................................................19

*FDRLST Media, LLC v. Nat'l Lab. Rels. Bd.*,
 35 F.4th 108 (3d Cir. 2022) ......................................................................8

*Ficker v. Talbot County*,
 553 F.Supp.3d 278 (D. Md. 2021)..................................................... 11, 13

*Granite State Outdoor Advert., Inc. v. City of Clearwater*,
 213 F.Supp.2d 1312 (N.D. Fl. 2002)...................................................10

*Granite State Outdoor Advert., Inc. v. City of Clearwater*,
 351 F.3d 1112 (11th Cir. 2003).............................................................10

*K.A. ex rel. Ayers v. Pocono Mountain Sch. Dist.*,
 710 F.3d 99 (3d Cir. 2013) ....................................................................21

*LaCroix v. Town of Fort Myers Beach, Florida*,
 38 F.4th 941 (11th Cir. 2022).................................................................13

*Lusk v. Vill. of Cold Spring*,
 475 F.3d 480 (2d Cir. 2007) ...................................................................18

*Members of City Council v. Taxpayers for Vincent*,
 466 U.S. 789 (1984) ..................................................................................9

*Murdock v. Pennsylvania*,
 319 U.S. 105 (1943) ...............................................................................17

*N. Olmsted Chamber of Com. v. City of N. Olmsted*,
  86 F.Supp.2d 755 (N.D. Ohio 2000) ...................................................................10

*Outdoor Sys., Inc. v. City of Merriam*,
  67 F. Supp. 2d 1258 (D. Kan. 1999) ...................................................................10

*Presbytery of New Jersey of Orthodox Presbyterian Church v. Florio*,
  40 F.3d 1454 (3d Cir. 1994) ...............................................................................20

*Ramsay v. Nat'l Bd. of Med. Examiners*,
  968 F.3d 251 (3d Cir. 2020) ...............................................................................20

*Rappa v. New Castle Cnty.*,
  18 F.3d 1043 (3d Cir. 1994) ....................................................................9, 15, 20

*Reed v. Town of Gilbert*,
  576 U.S. 155 (2015) ..................................................................... 7, 8, 9, 10

*Render v. Dean*,
  29 F.3d 1495 (11th Cir. 1994) ............................................................................18

*Riel v. City of Bradford*,
  485 F.3d 736 (3d Cir. 2007) ................................................................. 7, 9, 17

*Serv. Emps. Int'l Union, Loc. 3 v. Mt. Lebanon*,
  446 F.3d 419 (3d Cir. 2006) ...............................................................................18

*Shuttlesworth v. City of Birmingham*,
  394 U.S. 147 (1969) ............................................................................................16

*Southeastern Promotions, Ltd. v. Conrad*,
  420 U.S. 546 (1975) ............................................................................................15

*Startzell v. City of Phila.*,
  533 F.3d 183 (3d Cir. 2008) ...............................................................................15

*Stilp v. Contino*,
  613 F.3d 405 (3d Cir. 2010) ......................................................................... 13, 19

*Ward v. Rock Against Racism*,
  491 U.S. 781 (1989) ............................................................................................13

*Warner Cable Commc'ns, Inc. v. City of Niceville*,
    911 F.2d 634 (11th Cir. 1990) ....................................................................9

*Watchtower Bible & Tract Soc'y of N.Y., Inc. v. Vill. of Stratton*,
    536 U.S. 150 (2002) ...................................................................................18

*Willson v. City of Bel-Nor, Missouri*,
    924 F.3d 995 (8th Cir. 2019) ............................................................ 13, 15

*Withers v. Village of Airmont*,
    No. 07-Civ-9674 (SCR), 2010 WL 11712641 (S.D.N.Y April 30, 2010) ..........12

## Ordinance

§ 1205 ...................................................................................................4

§ 1209 ...................................................................................................4

§ 1209.C ...........................................................................................4, 17

§ 1213.B ...............................................................................................4

§ 1213.B.5 ...........................................................................................17

§ 1213.C ...............................................................................................4

§ 901 .................................................................................................2, 10

§ 904 ...................................................................................................12

§ 908 .....................................................................................................3

§ 908.E ................................................................................................11

§ 908.J ...............................................................................................3, 8

§ 908.L ...............................................................................................3, 8

§ 908.M ..............................................................................................3, 8

§ 908.N ............................................................................... 3, 7, 12, 20

§ 908.O ..............................................................................................3, 8

§ 909.............................................................................................................4

§ 909.H.........................................................................................................4

§ 910.............................................................................................................3

§ 916.............................................................................................................2

§ 916.A.2....................................................................................................3, 8

§ 916.B.1...................................................................................................3, 12

§ 916.B.2......................................................................................................12

§ 916.B.4............................................................................ 3, 8, 12, 20

## INTRODUCTION

Criticizing the government is a form of expression that lies at the heart of the First Amendment. This is especially true when the criticism is written on a sign located at one's home. Not everyone has the means to spread their message far and wide through the bully pulpit, expensive advertisements, or eloquent writings. Instead, the most effective medium for speech available to many is a sign on their private property. The First Amendment guards this liberty with vigor.

The Blilers seek to peacefully express their opinion with a four-by-eight-foot sign on their property. They are prohibited from doing so under the Olyphant Borough's sign ordinance ("Ordinance"), which limits residents to one six-square-foot sign. But the Ordinance is unconstitutional. First, the Ordinance' numerical and size restrictions are content based. While Borough residents are limited to one small sign to express their views, the Borough can have as many signs—of whatever size and on whatever topic—as it wants. The Ordinance also provides preferential treatment for certain other types of signs based on their content. The Ordinance is therefore subject to strict scrutiny, which it cannot survive. Indeed, its numerical and size restrictions fail even under intermediate scrutiny. Limiting residents to one six-square-foot sign is not narrowly tailored and does not afford them ample alternative channels to speak.

Second, the Ordinance's permitting regime—under which residents must obtain a permit to erect all temporary signs—is also unconstitutional. The permitting regime is a prior restraint, and it impermissibly delegates unbridled discretion to the Borough. Moreover, the requirement that residents must pay a fee and obtain a permit to place a sign on their property is not narrowly tailored. The First Amendment prohibits the government from charging a fee to speak, and the delays associated with permit issuance impermissibly preclude spontaneous speech.

Every day the Blilers are unable to display their sign is another day they are deprived of a fundamental liberty protected by the United States Constitution. Because the Ordinance fails both strict and intermediate scrutiny, the Court should enjoin its enforcement pending the outcome of this case.

## BACKGROUND

### I.    THE BOROUGH'S SIGN ORDINANCE

The Ordinance regulates signs in the Borough, among other things. Compl. ¶¶ 16–20 and Exhibit A (Article IX). The purposes of the Ordinance's sign provisions are to "advance the public safety and welfare" and establish "a well maintained and attractive community." Ordinance § 901. The Ordinance generally limits property owners in residential zones to one sign, which may not exceed six square feet. *Id.* § 916. Properties fronting more than one street are allowed to have a sign on each frontage, but most residential properties in the Borough front only one street. *Id.*

The Ordinance contains several relevant exemptions from its general rule. *Id.* § 908. Most notably, the Borough has completely exempted its own signs from any numerical or size limitations. *Id.* § 908.N. In addition, residents may have more than one sign depending on the content of the additional sign(s), including (1) signs that list the name and address of the occupants (two additional signs), (2) handicapped parking signs (no numerical limitation), (3) private drive signs (one additional sign per driveway), (4) security and warning signs (one additional sign), and (5) real estate signs (one additional sign). *Id.* §§ 908.J, 908.L., 908.M., 908.O, 916.A.2. The Ordinance also provides that certain types of commercial signs in residential zones may be larger than six square feet—like signs of "contractors or artisans" (twelve square feet) and signs for "permitted non-residential or permitted institutional uses" (thirty-two square feet), the latter of which may be erected on each frontage and each "entrance [] or exit." *Id.* §§ 916.B.1, 916.B.4. Further, the Ordinance completely exempts flags. *Id.* § 908.E.

The Ordinance requires property owners to obtain a permit for all temporary signs, no matter what size. Ordinance § 910. Residents who want to erect a temporary sign must apply to the Borough's Zoning Officer, submit plans, and pay a minimum $40 application fee. *Id.*; *see also* Compl. ¶ 24. On information and belief, the Zoning Officer also has the authority to review and approve the content of the sign before issuing a permit. *Id.* ¶ 26.

3

Upon receipt of a permit application, the Zoning Officer has thirty days to rule. Ordinance § 1202.B.5. If the application is denied, the property owner may appeal to the Zoning Hearing Board (the "Board"). *Id.* §§ 1205, 1209. The fee for an appeal to the Board is $500. Compl. ¶ 27. There is no deadline by which the Board must adjudicate the appeal. Ordinance § 1209.C.

The Zoning Officer may issue notices of non-compliance to residents. *Id.* §§ 909.H, 1213.B. Upon notice, the property owner must bring the sign into compliance or remove it within ten days. *Id.* § 909.H. If the property owner does not comply, the Borough may remove the sign at the owner's expense. *Id.* The Zoning Officer can also seek imposition of a fine through a civil enforcement proceeding. *Id.* § 1213.C. This proceeding can result in the property owner being assessed a fine of up to $500 per day plus the Borough's attorney's fees and costs. *Id.*

## II.   THE BLILERS' SIGN

Dave Bliler, along with his wife Chelsea and adult daughter Paige, recently moved to the Borough from the neighboring town of Jessup. *Id.* ¶ 31. Their house, which they own together, is in a residential zone and fronts only one street. *Id.* ¶ 32.

Dave, a veteran of the United States Marine Corps, is a proud and patriotic American. *Id.* ¶ 33. He and his family recently experienced failures by the government that were no fault of their own yet had terrible consequences on their

lives. *Id.* ¶ 35. Because of these experiences, the Blilers feel compelled to speak out. *Id.* They wish to do so peacefully on their property with a sign. *Id.*

On or about October 13, 2023, the Blilers attached a four-by-eight-foot sign to the front of their house that read "FUCK THE GOVERNMENT" (the "Sign"). *Id.* ¶ 36. The Blilers made the Sign from a lightweight sheet of thin plastic and secured it to their front porch, facing the street. *Id.* The Sign was the Blilers' way of peacefully telling the government—and their neighbors and passers-by—how they feel. *Id.*

But not everyone was happy with the Sign. Shortly after it went up, the Blilers began receiving complaints. *Id.* ¶ 38. It did not take long for the complainants to enlist the Borough's help. *Id.* ¶¶ 38–39. On or about October 16, 2023, Borough Chief of Police James DeVoe visited the Bliler residence to discuss the complaints. *Id.* ¶ 39. After a brief, cordial conversation, Police Chief DeVoe told Dave the sign was "free speech" and it did not violate the law. *Id.* ¶ 39.

On or about November 2, 2023, to the Blilers' surprise, they received a letter from William Shigo, the Borough's Zoning Officer, informing them the Sign violated the Ordinance because they did not have a permit and because it was too big. *Id.* ¶ 41 and Exhibit C. The letter informed the Blilers that they must obtain a permit or remove the sign within ten days, or the Borough would seek the maximum fine against them in an enforcement action. *Id.* ¶ 41 and Exhibit C. The letter also

advised the Blilers they had the right to appeal to the Board if they paid the $500 appeal fee. *Id.* ¶ 41 and Exhibit C.

Rather than pay the fee to appeal or face the possibility of a significant fine, each of which would be a hardship to them, the Blilers opted to take the Sign down. *Id.* ¶ 43. They want to put it back up, but they are fearful of further enforcement. *Id.* ¶ 44. They seek a preliminary injunction against enforcement of the Ordinance against the Sign.

## ARGUMENT

A preliminary injunction is warranted when (1) "the movant has a reasonable probability of success on the merits;" (2) "irreparable harm would result if the relief sought is not granted;" (3) "the relief would result in greater harm to the non-moving party," and (4) "the relief is in the public interest." *Amalgamated Transit Union Loc. 85 v. Port Auth. of Allegheny Cnty.*, 39 F.4th 95, 102–03 (3d Cir. 2022) (citation omitted). The Blilers satisfy each of these requirements.

## I.   THE BLILERS ARE LIKELY TO SUCCEED ON THE MERITS

The Blilers challenge two aspects of the Ordinance—(1) its numerical and size limitations and (2) its permitting regime. Both are unconstitutional.

### A.   The Ordinance's Numerical and Size Restrictions are Unconstitutional.

In reviewing a sign ordinance, the "first step" is "to determine whether [it] is content-neutral or content-based." *Riel v. City of Bradford,* 485 F.3d 736, 743 (3d

Cir. 2007) (cleaned up), *abrogated in part on other grounds by Reed v. Town of Gilbert*, 576 U.S. 155 (2015). Content-neutral regulations are subject to intermediate scrutiny. *City of Austin v. Reagan Nat'l Advert. of Austin, LLC,* 596 U.S. 61, 76 (2022). But if the regulation is content based, it is subject to strict scrutiny. *Reed*, 576 U.S. at 163–64.

The Ordinance is content based. It is thus subject to strict scrutiny, which it does not satisfy. But even under intermediate scrutiny, the Ordinance is unconstitutional.

1.  <u>The Ordinance's numerical and size restrictions on signs are content based.</u>

A sign ordinance is content based when it "cannot be justified without reference to the content of the regulated [sign]." *Reed*, 576 U.S. at 164 (cleaned up). If the ordinance "single[s] out [specific] topic[s] or subject matter for differential treatment," it is based on content. *City of Austin,* 596 U.S. at 71.

Here, the Ordinance's numerical and size restrictions are content based. The Ordinance categorically exempts "public signs"—*i.e.*, any sign erected by the Borough.[1] While residents are limited to one small sign, the Borough may erect as

---

[1] The Ordinance defines public signs as "[s]igns erected by government agencies or utilities, including traffic, utility, safety, railroad crossing and identification signs for public facilities and *any signs erected by the Borough*." Ordinance § 908.N (emphasis added).

many signs—of whatever size and on whatever topic—as it wants. The Ordinance also allows residents to have more than one sign so long as the additional sign(s) fall within certain content-based categories. Ordinance §§ 908.J (name and address), 908.L (handicapped parking), 908.M (private drive), 908.O (security and warning), 916.A.2 (real estate). In addition, the Ordinance provides certain signs in residential zones may be larger than six square feet, including "signs for permitted non-residential or permitted institutional use" (thirty-two square feet), and that such signs may be erected on each frontage and each "entrance [] or exit." *Id.* § 916.B.4. Because the only way to know if a sign falls within one of these numerical and size exceptions is to read the sign, they are content based. *Reed*, 576 U.S. at 164.

The Ordinance's categorical exclusion for signs erected by the Borough is particularly problematic. While regulations that "distinguish[] among different speakers" are not based on content in the traditional sense, *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 340 (2010), such regulations are considered content based when the "speaker preference reflects a content preference," *Reed*, 576 U.S. at 170; *see also FDRLST Media, LLC v. Nat'l Lab. Rels. Bd.*, 35 F.4th 108, 127 n.9 (3d Cir. 2022) (concluding "speech restrictions based on the speaker's identity . . . must be narrowly-tailored to avoid offending the First Amendment"). When the government provides itself preferential treatment in the marketplace of ideas, this preference reflects a content preference. *See, e.g., Warner Cable Commc'ns, Inc. v.*

*City of Niceville*, 911 F.2d 634, 638 (11th Cir. 1990) ("[T]he government may not speak so loudly as to make it impossible for other speakers to be heard . . . .").

The government may, of course, "speak for itself," *Bd. of Regents of Univ. of Wisconsin Sys. v. Southworth,* 529 U.S. 217, 229 (2000), and it may regulate access to government property for purposes of private expression, *Members of City Council of Los Angeles v. Taxpayers for Vincent,* 466 U.S. 789, 812 (1984) (upholding ban on private signs in public right of way). As a result, the government may "erect [its] own . . . signs to promote safety, as well as directional signs and signs pointing out historic sites and scenic spots" without offending the First Amendment. *Reed,* 576 U.S. at 175 (Alito, J., concurring). But when the government favors its own *political* speech by granting itself a blanket exemption from a sign ordinance while restricting private speech on similar topics, this reflects a content preference. *Riel,* 485 F.3d at 749 n.7 ("[T]o be constitutional, the exception for official signs and notices must [be] limited to signs relating to the property on which they stand . . . ." (cleaned up)); *Rappa v. New Castle Cnty.*, 18 F.3d 1043, 1066 n. 41 (3d Cir. 1994) (holding ordinances allowing "signs advertising a local city. . . constitute[] impermissible content discrimination"), *abrogated in part on other grounds by Reed*, 576 U.S. 155; *Citizens for Free Speech, LLC v. Cnty. of Alameda*, 194 F. Supp. 3d 968, 984 (N.D. Cal. 2016) (holding sign ordinance's preferential treatment of government speech rendered it content based); *Granite State Outdoor Advert., Inc. v. City of Clearwater,*

9

213 F.Supp.2d 1312, 1335 (N.D. Fl. 2002) (same), *rev'd in part on other grounds,* 351 F.3d 1112, 1120 (11th Cir. 2003); *N. Olmsted Chamber of Com. v. City of N. Olmsted*, 86 F.Supp.2d 755, 774 (N.D. Ohio 2000) (same). By exempting all signs erected by the Borough from all numerical and size restrictions, the Ordinance violates this principle in spectacular fashion. Based on this fact, along with the other provisions of the Ordinance that discriminate based upon the content of the sign, the Ordinance is content based.

2.   <u>The Ordinance's numerical and size restrictions do not satisfy strict scrutiny.</u>

To satisfy strict scrutiny, the government must demonstrate the regulation is "narrowly tailored to serve compelling state interests." *Reed*, 576 U.S. at 163. The Borough cannot satisfy that burden here.

*i.  Traffic safety and aesthetics are not compelling.*

The Ordinance's stated purposes are to advance "the public safety and welfare" and establish "a well maintained and attractive community." Ordinance § 901. These purposes are not compelling. *Camp Hill Borough Republican Association v. Borough of Camp Hill*, 2023 WL 2692400, at \*10 (M.D. Penn. Mar. 29, 2023). Indeed, "no Supreme Court or U.S. Court of Appeals precedent has held traffic safety and aesthetics qualify as compelling government interests" in this context. *Id.*; *see also Outdoor Sys., Inc. v. City of Merriam*, 67 F. Supp. 2d 1258, 1269 (D. Kan. 1999) ("A locality's interest in aesthetics or traffic safety will rarely

10

override a citizen's right to free speech on his or her own property." (collecting cases)). The Ordinance fails for this reason alone.

*ii. The Ordinance is not narrowly tailored.*

The Ordinance also is not narrowly tailored. First, the numerical and size limitations are unconstitutionally *underinclusive* because they "fail to prohibit [other] conduct that endangers [the Borough's stated] interests in a similar or greater degree than [the prohibited conduct] does." *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah.*, 508 U.S. 520, 543 (1993); *see also City of Ladue v. Gilleo*, 512 U.S. 43, 54 (1994) (noting underinclusive regulations undermine "the government's rationale for restricting speech in the first place"). The Ordinance's various exemptions undermine the purported goals of traffic safety and aesthetics.

For example, the Ordinance exempts all flags, regardless of their number or size. *See* Ordinance § 908.E. If more than one small sign can distract drivers and impact aesthetics, a multitude of large flags surely has at least the same impact. *Ficker v. Talbot County*, 553 F.Supp.3d 278, 284–85 (D. Md. 2021) ("[I]f the County is primarily concerned with aesthetics and traffic safety, those concerns would similarly apply to flags . . . ."). In addition, the Ordinance allows (1) more than one sign so long as the second sign is an exempted type (including real estate signs), (2) "signs of contractors or artisans" to be up to twelve square feet, (3) "signs for permitted non-residential or permitted institutional use" to be up to thirty-two square

feet, (4) property owners to place several "signs for permitted non-residential or permitted institutional use" on the premises, and (5) public signs to be as large or numerous as the Borough wants. Ordinance §§ 916.B.1, 916.B.2, 916.B.4, 908.N. But signs containing residents' political speech are "no more harmful" to the Borough's putative interests than these other types of signs. *City of Cincinnati v. Discovery Network, Inc.,* 507 U.S. 410, 418 (1993) (holding ordinance banning news racks for commercial advertising underinclusive); *see also Withers v. Village of Airmont*, No. 07-Civ-9674 (SCR), 2010 WL 11712641, at *4 (S.D.N.Y April 30, 2010) ("There is no reason why the Village should privilege the content of [real estate] signs over political signs since they affect traffic safety and Village aesthetics as much as any other.").

Second, the Ordinance's numerical and size limitations are also *overinclusive* because they "prohibit too much protected speech." *Gilleo*, 512 U.S. at 51. The Ordinance defines a sign as "[a]ny device visible from a public place whose essential purpose and design is to convey either commercial or noncommercial messages." Ordinance § 904. By its terms, the Ordinance thus prohibits residents from placing a "Happy Birthday" banner on their front porch, a holiday display with the words "Merry Christmas" on their house, multiple standard-sized election signs on their lawn, and even a series of hand-written notes on someone's front door. These are "prohibition[s] of alarming breadth," and they are unconstitutional under the

overbreadth doctrine. *Willson v. City of Bel-Nor, Missouri*, 924 F.3d 995, 1103 (8th Cir. 2019); *see also Stilp v. Contino*, 613 F.3d 405, 409 (3d Cir. 2010) (holding restriction is invalid on its face "if a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep" (cleaned up)). Indeed, this is the antithesis of narrow tailoring.

Moreover, limiting residential property owners to one six-square-foot sign is unduly restrictive of speech. Such a severe limitation is not narrowly tailored to serve the Borough's interests. *Willson*, 924 F.3d at 1003 (holding "a one-sign limit is too restrictive" of speech); *Arlington Cnty. Republican Comm. v. Arlington Cnty.*, 983 F.2d 587, 594 (4th Cir. 1993) (holding two-sign limit unduly "limit[s] [homeowners'] ability to express support through sign posting"); *Ficker*, 553 F.Supp.3d at 285 (invalidating ordinance limiting political signs to six square feet); *see also Gilleo*, 512 U.S. at 58 (holding ban on residential signs too broad); *LaCroix v. Town of Fort Myers Beach, Florida*, 38 F.4th 941, 945 (11th Cir. 2022) (holding ban on portable signs not narrowly tailored to town's interest in reducing visual blight and increasing traffic safety).

For these reasons, the Ordinance's numerical and size restrictions fail strict scrutiny.[2]

_____

[2] To satisfy strict scrutiny, the government must also demonstrate that the regulation is the "least restrictive means" of accomplishing the regulation's purpose. *Ward v. Rock Against Racism*, 491 U.S. 781, 798 n.6 (1989). Because the Ordinance's

3.   The Ordinance's numerical and size restrictions on signs do not satisfy intermediate scrutiny.

The Ordinance's numerical and size restrictions also fail under intermediate scrutiny. To satisfy intermediate scrutiny, the government must demonstrate the regulation is "narrowly tailored to serve a significant governmental interest" and "leave[s] open ample alternative channels for communication." *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 293 (1984). The Borough cannot make this showing here.

First, for the same reasons as discussed in connection with strict scrutiny, the Ordinance's numerical and size restrictions are not narrowly tailored—the Ordinance's exceptions render it underinclusive, the Ordinance is unconstitutionally overbroad, and limiting residents to one six-square-foot sign simply restricts too much speech.

Second, the Ordinance's numerical and size restrictions do not leave open ample alternative channels of communication. Residential signs are a unique form of expression with a rich history and tradition. *Gilleo*, 512 U.S. at 56 ("Displaying a sign from one's own residence often carries a message quite distinct from placing the same sign someplace else . . . or conveying the same text or picture by other

---

numerical and size restrictions are both under- and overinclusive, the Court need not evaluate whether those restrictions are the "least restrictive means." In any event, those restrictions do not remotely satisfy this standard. The Borough could plainly advance its goals through an ordinance that allows more speech.

14

means."). "A person who puts up a sign at her residence often intends to reach neighbors, an audience that could not be reached nearly as well by other means." *Id.* at 57; *see also Startzell v. City of Phila.*, 533 F.3d 183, 202 (3d Cir. 2008) (noting "an alternative is not ample if the speaker is not permitted to reach the intended audience" (cleaned up)). This is especially true "for persons of modest means or limited mobility," for whom a residential sign has "no practical substitute." *Gilleo*, 512 U.S. at 57. "Due to the special significance of the right to speak from one's own home, [a one-sign limitation does] not afford adequate alternatives" for speech. *Willson*, 924 F.3d at 1004; *Arlington Cnty. Republican Comm.*, 983 F.2d at 594 (same with respect to two-sign limit); *see also Rappa,* 18 F.3d at 1076 (citing *Arlington Cnty. Republican Comm.* with approval).

For these reasons, the Ordinance's numerical and size restrictions fail intermediate scrutiny.

## B.    The Ordinance's Permitting Regime is Unconstitutional.

Even putting aside the Ordinance's unconstitutional numerical and size restrictions, the Ordinance's permitting regime is also unconstitutional.

### 1.    The Ordinance's permitting regime impermissibly grants the Borough the unbridled discretion to grant or deny permits.

The permitting regime is a prior restraint on speech. *See Se. Promotions, Ltd. v. Conrad*, 420 U.S. 546, 554 (1975) (concluding a prior restraint exists where the government may "determine whether the applicant should be granted permission [to

speak]"). As such, the permitting regime "bear[s] a heavy presumption against its constitutional validity." *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70 (1963). While prior restraints are not per se invalid, those conferring "virtually unbridled discretion" in the permitting authority are. *Shuttlesworth v. City of Birmingham*, 394 U.S. 147, 151 (1969). Such discretion presents two threats to the exercise of protected expression. First, the lack of standards "intimidates parties into censoring their own speech, even if the discretion and power are never actually abused." *City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 757 (1988). Second, "the absence of express standards" makes it difficult to differentiate between a legitimate denial and an "illegitimate abuse of censorial power." *Id.* at 758. To avoid these problems, the government must show its regulations provide "narrow, objective, and definite standards to guide the [permitting] authority." *Shuttlesworth*, 394 U.S. at 151.

The Ordinance's permitting regime fails this standard. By practice, the Zoning Officer has the authority to grant or deny permits based on what they say. Compl. ¶ 21. Yet the Ordinance not only lacks "narrow, objective, and definite standards" guiding the Zoning Officer's content review; it lacks *any* standards whatsoever. For this reason, the permitting regime is invalid.

2.    <u>The Ordinance's permitting regime fails under intermediate scrutiny.</u>

Even if the Zoning Officer lacked the authority to review permit applications for content, the permitting regime does not satisfy intermediate scrutiny. In *Gilleo*, the Supreme Court, applying intermediate scrutiny, held the government may not prohibit residents from placing signs on their private property. 512 U.S. 43. Among other deficiencies, such a prohibition simply restricts "too much protected speech." *Id.* at 51. Here, like the prohibition in *Gilleo*, the permitting requirement is unduly restrictive. Prior to erecting a temporary sign—*any* sign of *any* size—residents must (1) pay the Borough a minimum $40 application fee (plus a $500 fee to appeal if the application is denied) and (2) obtain a permit, which can take an extended length of time.[3] These features of the permitting scheme are not narrowly tailored.

First, the permit and appeal fees impermissibly exact a tax for the exercise of First Amendment rights. *Curry v. Prince George's Cnty.*, 33 F. Supp. 2d 447, 455 (D. Md. 1999) (invalidating permitting regime that required payment of fee and permit for every sign); *Murdock v. Pennsylvania*, 319 U.S. 105, 113 (1943) (holding government may not "impose a charge for the enjoyment of a [constitutional] right"); *see also Riel*, 485 F.3d at 752 n.8 (holding exemption from permitting regime for

---

[3] While the Zoning Officer must adjudicate permit applications within thirty days, Ordinance § 1202.B.5, there is no deadline by which the Board must act on an appeal of the Zoning Officer's decision, *id.* § 1209.C.

signs smaller than twelve square feet saved ordinance from invalidity). Second, the delays associated with adjudication of the permit application infringe on residents' rights to engage in spontaneous speech. *Lusk v. Vill. of Cold Spring*, 475 F.3d 480, 492 (2d Cir. 2007) (invalidating residential sign permitting regime where "the time required to obtain approval may prevent the property owner from [speaking] until after the public issue is settled"); *see also Watchtower Bible & Tract Soc'y of N.Y., Inc. v. Vill. of Stratton*, 536 U.S. 150, 167 (2002) (invalidating ordinance that required permit for door-to-door canvassers); *Serv. Emps. Int'l Union, Loc. 3 v. Mt. Lebanon*, 446 F.3d 419, 427 (3d Cir. 2006) (similar); *Render v. Dean*, 29 F.3d 1495, 1501 (11th Cir. 1994) (holding evaluation of delay includes time to adjudicate internal appeal).

To be sure, for some First Amendment activity, like a large public parade, the government may "both require a permit . . . and also collect fees that fairly reflect costs incurred by the [government]." *Baldwin v. Redwood City*, 540 F.2d 1360, 1372 (9th Cir. 1976). "But there is no justification for imposing [permit and fee] requirements in the case of . . . signs posted upon a private residence." *Curry*, 33 F. Supp. 2d at 455. Unlike public parades, residential signs do not "interfere with use of the streets," nor are there any meaningful "expenses to defray." *Id.* Instead, permitting and fee requirements for residential signs amount to nothing more than a tax on speech and an unwarranted interference with residents' ability to speak

spontaneously. *Id.*; *Lusk*, 475 F.3d at 492; *see also Diener v. Reed*, 232 F. Supp. 2d 362, 387 (M.D. Pa. 2002) (holding permit requirement for single speaker in public forum not narrowly tailored (collecting cases)). For these reasons, the permitting requirement is not narrowly tailored.

## II.    THE EQUITABLE FACTORS FAVOR THE BLILERS

Because the Blilers have made a strong showing on the merits, the other preliminary injunction factors fall in their favor. *See B.H. ex rel. Hawk v. Easton Area Sch. Dist.*, 725 F.3d 293, 302 (3d Cir. 2013) ("[T]he likelihood of success on the merits [in First Amendment cases]—tends to determine which way the other factors fall."); *Stilp*, 613 F.3d at 409 (noting in an "action involv[ing] the alleged suppression of speech in violation of the First Amendment, [the Court] focuses [its] attention on the first [preliminary injunction] factor").

**Irreparable Harm.** The Blilers will be irreparably harmed without a preliminary injunction. The loss of First Amendment freedoms, for even minimal periods of time, "unquestionably constitutes irreparable injury." *B.H.*, 725 F.3d at 302 (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality op.)). A preliminary injunction is "clearly appropriate" where "First Amendment interests [are] either threatened or in fact being impaired at the time relief was sought." *Stilp*, 613 F.3d at 409 n.4 (quoting *Elrod*, 427 U.S. at 373 (plurality op.)).

Here, the Blilers are presently suffering irreparable harm. They have curtailed their constitutionally protected speech in response to the Borough's threat to enforce the Ordinance against them. And because the Ordinance tramples their First Amendment freedoms, they are not required to risk having future enforcement action being taken against before seeking relief. *Presbytery of New Jersey of Orthodox Presbyterian Church v. Florio*, 40 F.3d 1454, 1467 (3d Cir. 1994). The Blilers have established irreparable harm.

**Balance of the Equities.** The equities tip in plaintiff's favor when "the potential injury to the plaintiff[] without this injunction" is greater than "the potential injury to the defendant with it." *Ramsay v. Nat'l Bd. of Med. Examiners*, 968 F.3d 251, 263 (3d Cir. 2020). This is the case here.

The Borough will suffer no cognizable harm from a preliminary injunction allowing the Blilers to display their Sign. The Sign is thirty-two square feet, which is no larger than other types of signs already allowed in residential zones. Ordinance §§ 916.B.4., 908.N; *see Rappa*, 18 F.3d at 1073 (noting when courts have found sign ordinances unconstitutional, "they have mandated that states permit all speech with a higher place in the constitutional hierarchy than the speech allowed by the statutory exemption"). Moreover, the Borough cannot reasonably contend a single four-by-eight-foot sign materially creates a threat to either traffic safety or aesthetics. And because the proposed preliminary injunction applies only to the Blilers, it does not

20

undermine the Borough's general regulatory interests. *K.A. ex rel. Ayers v. Pocono Mountain Sch. Dist.*, 710 F.3d 99, 114 (3d Cir. 2013) (concluding equities favored plaintiff where "[defendant] can still regulate" other speech). On these facts, the Blilers' proposed preliminary injunction "does not harm the [Borough] more than denying relief would harm [them]." *Id.*

**Public Interest.** "[T]he enforcement of an unconstitutional law vindicates no public interest." *Id.* Because the Ordinance is plainly unconstitutional, there is no benefit to the public by allowing it to remain in effect. *Id*. This factor, too, favors a preliminary injunction.

Finally, no bond should be required because there is no "risk of monetary loss" to Defendants and the proposed injunction "protects First Amendment rights." *Marshall v. Amuso*, 571 F. Supp. 3d 412, 430 (E.D. Pa. 2021).

## CONCLUSION

For the forgoing reasons, the court should grant the Blilers' Motion.

[SIGNATURE BLOCKS ON FOLLOWING PAGE]

Dated: December 12, 2023

Respectfully submitted,

*/s/ Karin Sweigart*
Karin Sweigart
(PA Bar ID: 317970)
DHILLON LAW GROUP INC
177 Post Street, Suite 700
San Francisco, California 94108
415 433-1700
KSweigart@Dhillonlaw.com

Josh Dixon*
Eric A. Sell*
CENTER FOR AMERICAN LIBERTY
1311 Main Street, Suite 207
Mount Airy, MD 21770

*Counsel for Plaintiffs*
* *Pro Hac Vice* application forthcoming

22

## CERTIFICATE OF WORD COUNT

I hereby certify that the word count of the foregoing memorandum of law, excluding the cover page, table of contents, table of authorities, and this page, as determined by the Microsoft Word software with which it was produced, is 4,986 words.

Dated: December 12, 2023

/s/ Karin Sweigart
Karin Sweigart
(PA Bar ID: 317970)